STATE of Wisconsin, Plaintiff-Respondent,

v.

Lois J. KAUFMAN, Defendant-Appellant.†

Court of Appeals

*No. 93–2751. Oral argument September 14, 1994.—Decided October 26, 1994.*

(Also reported in 525 N.W.2d 138.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs and oral argument of *John D. Lubarsky*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief and oral argument of *James E. Doyle*, attorney general, and *Marguerite M. Moeller,* assistant attorney general. Oral argument by *Marguerite M. Moeller.*

Before Anderson, P.J., Nettesheim and Snyder, JJ.

ANDERSON, P.J.   Lois J. Kaufman appeals from a judgment of conviction for two counts of welfare fraud contrary to § 49.12(1) and (9), STATS., and an order denying her motion for postconviction relief. We affirm the trial court's judgment of conviction as to the felony count of welfare fraud and reverse the judgment of conviction regarding the misdemeanor count.

On January 25, 1993, a jury found Kaufman guilty of two counts of receiving public assistance and intentionally failing to notify the Department of Social Services within ten days of a change of fact as originally stated in her application for public assistance. Count one alleged a time period between June 21 and September 22, 1991, in violation of § 49.12(1) and (9), STATS., 1991-92. Count two alleged a time period between September 21 and December 22, 1990, in violation of § 49.12(1) and (9), STATS., 1989-90. The legislature's revision of § 49.12(1), by 1991 Wis. Act 39, § 1464, effective August 15, 1991, had the effect of changing count one from a felony to a misdemeanor. The trial court amended the judgment of conviction to reflect this change.

On July 15, 1993, Kaufman filed a motion for postconviction relief, requesting, among other things, that the trial court vacate the judgment of conviction with respect to both counts of welfare fraud. The trial court denied Kaufman's motion to vacate either count of wel-

fare fraud. Kaufman appeals from the judgment of conviction and the order denying her motion for post-conviction relief.

## I. MISDEMEANOR COUNT—WELFARE FRAUD

The information charged in count one that between June 21 and September 22, 1991, Kaufman failed to notify authorities of a change in her circumstances within ten days. Kaufman had been receiving public assistance since 1987. In her recent applications for assistance, Kaufman indicated that she had three minor children living with her.[1] She stated in the applications that the father of her two youngest children, Louis D. Ranieri, Jr., was not living with her in the residence. The complaint alleged that witnesses knew that Ranieri and Kaufman resided in the same household during the time Kaufman was receiving aid. Ranieri testified at trial, however, that he began serving sixty days in the Winnebago county jail on June 14, 1991, and did not return to the household until after his release on August 9, 1991. Kathy Zwicky, Kaufman's case worker, testified at trial that Kaufman notified the welfare department of Ranieri's return to the household on August 19, 1991.

Zwicky testified that Kaufman received an overpayment of $537 subsequent to June 1991. She stated that this dollar amount constituted Kaufman's total AFDC grant, offset by her exhusband's child support payments. As to the misdemeanor count, Kaufman argues that the facts as she originally stated to the department did not change during the time period

[1] Kaufman's case worker, Kathy Zwicky, testified at trial that Kaufman had most recently completed applications for assistance in September 1989, April 1990, November 1990 and May 1991.

specified in count one of the information because Ranieri was in jail until August 9, 1991, after which date she timely notified the department of his return. The State contends, however, that regardless of Ranieri's temporary incarceration, a violation of § 49.12(9), STATS., is a continuing offense which began with Kaufman's failure to report prior to June 1991.

In addressing the State's argument, we are required to look at the sufficiency of the complaint and the information to determine if a continuing offense was alleged. "The sufficiency of a pleading presents a legal issue which we decide without deference to the trial court." *State v. Chambers*, 173 Wis. 2d 237, 251, 496 N.W.2d 191, 196 (Ct. App. 1992). In determining whether there was sufficient evidence to prove that Kaufman's circumstances did in fact change as to the misdemeanor count, "the only question for the court is whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt." *Whitaker v. State*, 83 Wis. 2d 368, 377, 265 N.W.2d 575, 580 (1978).

Kaufman argues that there is insufficient evidence to show that she failed to notify the department of a change in circumstances between June 21, 1991, and September 22, 1991, as alleged in the information. Section 49.12(9), STATS., provides in part:

> If any person obtains for himself or herself, or for any other person or dependents or both, assistance under this chapter on the basis of facts stated to the authorities charged with the responsibility of furnishing assistance and fails to notify said authorities within 10 days of any change in the facts as originally stated and continues to receive assis-

tance based on the originally stated facts such
failure to notify shall be considered a fraud . . ..

Kaufman contends that she notified the department on
August 19, 1991, that her circumstances had changed
which was within ten days of Ranieri's return to the
household.

■

We agree with Kaufman that there is insufficient
evidence to prove that Kaufman's circumstances
changed prior to Ranieri's return on August 10, 1991.
Ranieri was in jail between June 14 and August 9,
1991. Upon his return to the household, Kaufman
reported his presence within the ten-day period
required by law. Focusing solely on the time period
alleged in count one of the information, we conclude
that there is insufficient evidence to show that the facts
as Kaufman stated to the authorities in her application
for assistance changed.

The State contends that while the offense was
charged as having occurred between June 21 and Sep-
tember 22, 1991, a violation of § 49.12(9), STATS., is a
continuing offense which began prior to June 21; there-
fore, Ranieri's temporary absence from the home
during the time he spent in jail is still included as part
of the continuing offense. The State argues that since
Kaufman admitted to Detective Wolf that Ranieri had
been living at her residence since the fall of 1988, her
failure to report occurred before the charging period.

■

We disagree with the State that Kaufman can be
held accountable for a continuing violation beginning
at a date not alleged in the information.[2] "One of the

[2] The State has the initial power to decide the unit of prose-
cution: "If the defendant's actions in committing the separate

essential functions of the information is to provide the defendant with sufficient details regarding the nature of the charge and the conduct which underlies the accusation to allow her or him to prepare or conduct a defense." *State v. Stark*, 162 Wis. 2d 537, 544, 470 N.W.2d 317, 320 (Ct. App. 1991). The court went on to state: "When informing the accused, the time frame in which the crime allegedly occurred is one of the underlying facts that should be provided." *Id.*

The State elected to charge Kaufman with welfare fraud on two separate occasions. Because the State did not allege a date from which the continuing offense allegedly began, Kaufman did not have notice that she would have to prepare a defense to a continuing violation.[3] Regardless of when Kaufman's failure to report allegedly occurred, this critical date was not stated in the information and cannot now be considered without violating Kaufman's rights of due process. *See State v. George*, 69 Wis. 2d 92, 96-97, 230 N.W.2d 253, 256 (1975).

---

offenses may properly be viewed as one continuing offense, it is within the state's discretion to elect whether to charge 'one continuous offense or a single offense or series of single offenses.' " *State v. Lomagro*, 113 Wis. 2d 582, 587, 335 N.W.2d 583, 587 (1983) (quoted source omitted).

[3] Prior to and during opening statements at trial, Kaufman's trial counsel stated:

> [I]f they're going to put on all kinds of testimony from other witnesses saying [Ranieri] was supposedly there at other periods of time, then I have a problem because I wasn't able to prepare for that defense because [the State] didn't charge those periods. . . . Your Honor, again for the record I'm going to object. . . . He's arguing for a four-year period. My client's charged for two three-month periods. I don't want to have to defend her on things she's not charged with. I think he's getting beyond the scope of the charge and beyond what evidence should be admitted.

The State cites *John v. State*, 96 Wis. 2d 183, 291 N.W.2d 502 (1980), as support for the proposition that § 49.12(9), STATS., is a continuing offense. Indeed, the court in *John* clearly recognized § 49.12(9) as a continuing offense. *Id.* at 194, 291 N.W.2d at 507-08. However, *John* is critically different from the present case because the allegations contained in the complaint and the information in *John* encompassed the entire period during which the violation occurred: "The complaint and information alleged that the defendant's daughter began living with her grandmother outside the defendant's household sometime in 1970. . . . The complaint and information covered the period from April 1, 1972 through June 30, 1977." *Id.* at 186, 291 N.W.2d at 504. Additionally, both parties agreed that the child moved out of the defendant's residence in 1970. *Id.* In contrast, in the present case, the information did not indicate the date from which the continuing violation began running nor did the parties agree to a date when Ranieri returned to Kaufman's residence. Therefore, the State is bound by the time period specified in the information.

## II. FELONY COUNT—WELFARE FRAUD

The information charged in count two that between September 21 and December 22, 1990, Kaufman failed to notify authorities of a change in her circumstances. Zwicky testified that Kaufman fraudulently received $179 on three occasions with respect to the felony count.

Kaufman takes issue with the department's policy, stating that "it is the policy of the Winnebago County Department of Social Services to declare any money provided a recipient of aid subsequent to that person's failure to timely report a change in circumstances, an

overpayment." Kaufman contends that contrary to the department's policy, Ranieri's presence in the home would not necessarily have resulted in the termination of her aid. Therefore, Kaufman argues that in determining her overpayment, the department should have offset the amount she would have received with Ranieri living in the home.

The State responded to Kaufman's argument during oral argument, contending that when Ranieri moved back into Kaufman's house, the basis of her eligibility for welfare benefits as the only parent living in the household was destroyed. While Kaufman and Ranieri may still have been able to receive assistance, they would have had to reapply for aid together because the basis of their eligibility for assistance would be different.

Whether Kaufman's total eligibility for public assistance was destroyed when Ranieri returned to the residence requires us to apply the relevant statutes and administrative code provisions to the facts. This is a question of law which we review de novo. *See Sterman v. Hornbeck*, 156 Wis. 2d 556, 562-63, 457 N.W.2d 874, 877 (Ct. App. 1990). Additionally, in determining whether there was sufficient evidence to prove Kaufman received a benefit to which she was not entitled, this court looks to whether the evidence before the jury was sufficient to prove Kaufman's guilt beyond a reasonable doubt. *Whitaker*, 83 Wis. 2d at 377, 265 N.W.2d at 580.

We agree with the State that Kaufman's core eligibility for assistance was destroyed when Ranieri moved into her residence. Kaufman received public assistance based on the information she provided in

the application for assistance forms. In Kaufman's applications for public aid, she indicated that the father of her two youngest children, Ranieri, was absent from the home and that Kaufman and Ranieri had never married. Ranieri's absence from the home was the basis of Kaufman's eligibility for assistance as an AFDC-regular case.[4] *See* WIS. ADM. CODE § HSS 201.03(2m). When Kaufman failed to notify the proper authorities of Ranieri's return, the basis of her eligibility as a regular case was destroyed.

When Ranieri moved back into the house, any aid which the couple could have received would have been based on criteria different from that upon which Kaufman's applications were based. In order to be eligible for assistance with Ranieri living in the household, Kaufman and Ranieri would have had to jointly apply. Thus, their joint application would constitute a new case and would provide an entirely different basis for eligibility.[5] Section 49.19(4)(dm), STATS., 1989-90, permits assistance where both parents are in the household:

Aid may be paid to parents of a dependent child if the parents are unable to supply the needs of the child because of the unemployment of the parent, in

---

[4] According to WIS. ADM. CODE § HSS 201.03(2m), an "AFDC-regular case" is "an AFDC group in which the child or children are deprived of parental support or care because a parent has died or is continually absent from the home."

[5] If Kaufman and Ranieri had jointly applied, any assistance that they would have received would have been as part of AFDC unemployed parent group. "AFDC unemployed parent group" is defined by WIS. ADM. CODE § HSS 201.03(3) as: "an AFDC group in which the child or children are deprived of parental support because the principal wage earner in the group is unemployed."

a home in which both parents live, who earned the most income during the 24-month period immediately preceding the month for which aid is granted and who meets the federal requirements as to past employment and current unemployment.

The section goes on to list other requirements of the unemployed parent before aid can be granted. WISCONSIN ADM. CODE § HSS 201.14(3) (March 1990) also articulates the requirements for an unemployed parent to receive aid.

Once Ranieri returned to Kaufman's residence, the department was not required to hypothesize how Ranieri's return would change Kaufman's circumstances. It was up to Ranieri and Kaufman to reapply for assistance which would require Ranieri, not the department, to disclose the conditions in his financial situation. Based upon Ranieri's disclosure, the department could then determine the family's eligibility for aid.

Zwicky testified at trial that once Ranieri moved into the home, Kaufman's case was closed and Ranieri and Kaufman would have had to fill out a joint application for assistance in order to determine Ranieri's assets and employment history. When asked whether the department considers everything subsequent to a failure to report a father of the children returning to the home as being ineligible or an overpayment, Zwicky answered "yes" and stated: "We would need all the information on him to determine the eligibility of the entire family." Zwicky testified that after Kaufman reported Ranieri's return, Ranieri and Kaufman could have reapplied for assistance but they never provided the information necessary for them to qualify.

In *Weber v. State*, 59 Wis. 2d 371, 208 N.W.2d 396 (1973), the court addressed a similar situation where a

recipient of public assistance failed to report the return of her husband to the home to the proper authorities. The court stated: "It is thus clear from the statutes themselves that a condition of eligibility is the continued absence of a parent from the home." *Id.* at 382, 208 N.W.2d at 401. The court went on to state:

> No crime can occur until the seven days have elapsed without reporting a change of circumstances. Only the funds received thereafter would be the result of fraud and computed in the determination of the penalty. The fact that changed in the instant case—the return of the husband to the household—would totally eliminate the eligibility for assistance under the statute. Under the circumstances here, the total amount of the aid received after the seven-day period of grace would be computed in determining the penalty. We are not here confronted by any unreported change of facts that might alter the amount of aid without totally destroying eligibility.

*Id.* at 383, 208 N.W.2d at 402. While the State believes that Weber determines the outcome of this case, Kaufman argues that unlike at the time *Weber* was decided, aid may now be paid to the parents of dependent children even if both parents are living in the home.[6] Therefore, Kaufman contends that Ranieri's return did not "totally destroy her eligibility for aid."

Contrary to Kaufman's assertions, we conclude for the purposes of this appeal that the holding in *Weber* is

---

[6] Laws of 1981, ch. 93, § 40, amended § 49.19(4)(dm), STATS., to include the following language: "[I]n a home in which both parents live, who earned the most income during the 24-month period immediately preceding the month for which aid is granted."

unaffected by the change in law allowing parents living in the same household to receive AFDC. The criteria upon which eligibility is based when a parent receives aid as the only parent living in a household differs entirely from when both parents living in the same household apply for assistance together. While Kaufman and Ranieri may have been eligible for assistance because of the change in the law, their eligibility would still rest on different criteria than that of an AFDC-regular case.

Kaufman also argues that the State did not present sufficient evidence to show beyond a reasonable doubt that she received a welfare benefit to which she was not entitled. She relies upon a reading of § 49.12(9), STATS., 1989-90, which refers to the progressive penalty structure of § 49.12(1), stating that when read together, § 49.12(9) requires the State to "show that [Kaufman] received some total amount of overgrant as a result of her failure to report Mr. Ranieri's return to her home, during the time period specified in the information."[7]

---

[7] Subsection (9) of § 49.12, STATS., 1989-90, states that "failure to notify shall be considered a fraud and the penalties in sub. (1) shall apply." Subsection (1) provides:

> Any person who, with intent to secure public assistance under this chapter, whether for himself or herself or for some other person, wilfully makes any false representations may, if the value of such assistance so secured does not exceed $100, be fined not more than $250 or imprisoned not more than 6 months or both, if the value of such assistance exceeds $100 but does not exceed $500, be fined not more than $500 or imprisoned not more than one year or both, if the value of such assistance exceeds $500, be fined not more than $500 or imprisoned not more than 5 years or both, and if the value of such assistance exceeds $2,500, be punished as prescribed under s. 943.20(3)(c).

Kaufman argues that the analysis articulated in *State v. Schumacher*, 144 Wis. 2d 388, 424 N.W.2d 672 (1988), should be applied to the present case. In *Schumacher*, the court held that under § 49.12(6), STATS., the State must prove that the defendant received a benefit to which he or she was not entitled. *See id.* at 415, 424 N.W.2d at 682-83. Subsection (6) and subsec. (9) of the statute have almost identical language for purposes of this appeal. The Wisconsin Supreme Court stated that the penalty structure in subsec. (1) "contemplates that there be some 'value,' which in turn contemplates some receipt of that value by the defendant. . . . [T]he mere failure to report cannot be the crime of fraud." *Id.* at 415, 424 N.W.2d at 683.

■

In the present case, the State abided by *Schumacher* in presenting sufficient evidence to show that Kaufman's eligibility for assistance, based on her living as the only parent in the household, was destroyed and therefore the value of the benefits received by Kaufman equaled the total amount of her AFDC payments during the time periods charged in the information.

*By the Court.*—Judgment and order affirmed in part and reversed in part.