STATE of Wisconsin, Plaintiff-Respondent,

v.

Janet A. CONNER, Defendant-Appellant.†

Court of Appeals

*No. 2008AP1296–CR. Submitted on briefs December 18, 2008.
—Decided August 27, 2009.*

2009 WI App 143

(Also reported in 775 N.W.2d 105.)

† Petition to Review granted 3/16/10.

449

451

On behalf of the defendant-appellant, the cause was submitted on the briefs of *J. Steven House* of *Mays Law Office, LLC*, Middleton.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Warren D. Weinstein*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Dykman, P.J., Vergeront and Bridge, JJ.

¶ 1. BRIDGE, J. Janet A. Conner appeals from the judgment of conviction entered against her and the order denying her motion for postconviction relief. Following a jury trial, Conner was convicted of one count of stalking with a previous conviction within seven years of a prior conviction in violation of Wis. Stat. § 940.32(2m)(b) (2007–08).[1] She contends that: (1) the circuit court improperly interpreted § 940.32(2m)(b) when it admitted evidence of her "course of conduct," which included acts that preceded her prior conviction for violating a harassment injunction obtained by the victim in the present matter; (2) the circuit court improperly admitted other acts evidence relating to the acts underlying her conviction for violating the injunction, as well as to acts underlying her conviction for criminal damage to the property of a victim other than the victim in the present matter; and (3) the criminal information did not provide her with adequate notice of the charged stalking offense. We disagree with each contention and affirm.

## BACKGROUND

¶ 2. Janet Conner was charged on December 7, 2005, with two counts of stalking with a previous conviction within seven years, in violation of Wis. Stat. § 940.32(2m)(b),[2] and one count of causing criminal damage to property, in violation of Wis. Stat.

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[2] Wisconsin Stat. § 940.32(2) and (2m)(b) provide:

(2) Whoever meets all of the following criteria is guilty of a Class I felony:

§ 943.01(1).[3] Counts one and two were charged as repeaters under Wis. Stat. § 939.62(1)(b) and count three was charged as a repeater under sub. (1)(a) of the statute.[4] All three counts arose from an incident on November 30, 2005, which involved Conner's "keying"

(a) The actor intentionally engages in a course of conduct directed at a specific person that would cause a reasonable person under the same circumstances to suffer serious emotional distress or to fear bodily injury to or the death of himself or herself or a member of his or her family or household.

(b) The actor knows or should know that at least one of the acts that constitute the course of conduct will cause the specific person to suffer serious emotional distress or place the specific person in reasonable fear of bodily injury to or the death of himself or herself or a member of his or her family or household.

(c) The actor's acts cause the specific person to suffer serious emotional distress or induce fear in the specific person of bodily injury to or the death of himself or herself or a member of his or her family or household.

. . . .

(2m) Whoever violates sub. (2) is guilty of a Class H felony if any of the following applies:

. . . .

(b) The actor has a previous conviction for a crime, the victim of that crime is the victim of the present violation of sub. (2), and the present violation occurs within 7 years after the prior conviction.

[3] Wisconsin Stat. § 943.01(1) provides:

(1) Whoever intentionally causes damage to any physical property of another without the person's consent is guilty of a Class A misdemeanor.

[4] Wisconsin Stat. § 939.62(1)(a) and (b) provide in relevant part:

939.62. Increased penalty for habitual criminality. (1) If the actor is a repeater, as that term is defined in sub. (2), and the present conviction is for any crime for which imprisonment

454

(scratching with a key or similar object) a vehicle owned by James and Rhonda Gainor.[5]

¶ 3. With respect to counts one and two, the criminal information alleged that on or about November 30, 2005, Conner intentionally engaged in a course of conduct directed at James (count 1) and Rhonda (count 2) that would cause "a reasonable person to fear bodily injury or death" and that Conner did in fact cause James and Rhonda to fear bodily injury or death. With respect to the "previous conviction within seven years" component of the two stalking charges under Wis. Stat. § 940.32(2m)(b), the information alleged that in June 2003, Conner was previously convicted of three counts of violating a harassment restraining order and that the victims in that matter were the Gainors. In count three, the information alleged that on or about the same date, Conner caused physical damage to a vehicle owned by the Gainors without the Gainors' consent.

¶ 4. Prior to trial, the State filed a motion pursuant to Wis. Stat. § 904.04(2) to introduce evidence of, and the facts underlying, four prior convictions involving Conner.[6] Of these, only one related to the Gainors

---

may be imposed, . . . the maximum term of imprisonment prescribed by law for that crime may be increased as follows:

(a) A maximum term of imprisonment of one year or less may be increased to not more than 2 years.

(b) A maximum term of imprisonment of more than one year but not more than 10 years may be increased by not more than 2 years if the prior convictions were for misdemeanors and by not more than 4 years if the prior conviction was for a felony.

[5] Because James and Rhonda Gainor share the same last name, for ease of understanding we refer to them by their first names except when referring to them collectively.

[6] The four convictions were: Iowa County case no. 1996CM166 (two counts of unlawful use of telephone); Iowa

—the June 2003 conviction for violating the Gainors' restraining order. Over Conner's objection, the court admitted evidence related to this conviction. The court ruled that the evidence went to the issue of motive, provided context to the situation leading to the criminal charges, provided background to the relationships of the parties, was relevant, and was not unduly prejudicial.

¶ 5. The court also admitted evidence of, and the facts underlying, Conner's prior conviction for criminal damage to property stemming from an incident in which she used a key to scratch a vehicle belonging to Joy Stolz. The court noted that this crime was very similar to count three, which charged Conner with causing criminal damage to property by using a key to scratch the Gainors' vehicle. The court ruled that this evidence was admissible to show *modus operandi,* and ruled further that the evidence was relevant and not unduly prejudicial.

¶ 6. At trial, James testified that he and Conner had been involved in a brief relationship that ended in May 2000, and that shortly thereafter he began seeing Rhonda, whom he married in 2001. He testified that in September 2000, Conner began a pattern of harassing behavior involving him as well as Rhonda, and that this activity continued for several years thereafter. The

County case no. 1997CM208 (one count of harassment, one count of unlawful use of telephone, and one count of resisting or obstructing an officer); Richland County case no. 2001CM236 (two counts of unlawful use of telephone, and three counts of violating a harassment restraining order); and Iowa County case no. 2003CM328 (one count of criminal damage to property). Case no. 2001CM236 involved crimes against James and Rhonda Gainor, and the remaining cases involved crimes against other individuals.

456

Gainors, as well as other witnesses, testified to the following events, which we have summarized for ease of understanding:

- James received numerous phone calls from Conner on about September 14, 2000.

- Conner entered James's home on October 4, 2000, and used his phone to call James, who was at Rhonda's home.

- Conner and her sister appeared at James's home on October 5, 2000, and stated that she wanted to talk to Rhonda, who was inside, because she had "bad things" to say about James.

- James received many "crank phone calls" at his home, Rhonda's home and his place of work during October and November 2000.

- Conner called James during the first week of December 2000 and stated that she was going to cause problems with Rhonda when the couple attended James's work Christmas party.

- When James left work a few days after his work Christmas party in December 2000, he discovered that the tires on his vehicle had been flattened.

- On December 15, 2000, James discovered upon leaving work that the windshield on his vehicle had been shattered.

- On December 25, 2000, James received a voicemail message from Conner warning him to watch where he parked so that Conner "wouldn't be tempted to do something to it since she's so psychotic."

- Conner confronted James at his place of employment on December 27, 2000, and secretly recorded their conversation.

457

- During January 2001, the Gainors received magazine subscriptions they had not ordered, received "crank phone calls" at work, and had someone call twice to cancel their reservation at the facility hosting their wedding reception.

- A harassment injunction was issued on February 16, 2001, and was effective until February 16, 2003.

- The Gainors received numerous "crank phone calls" at home and at work between February 2001 and June 2003.

- On various dates between February 2001 and June 2003, paint was dumped on the hood of James's vehicle; the passenger side of the vehicle was keyed; spray paint was painted down the passenger side of and across the windshield of James's vehicle; the windshield of James's vehicle was shattered; and Superglue was squirted into the door locks of two of James's vehicles.

- Conner was convicted in June 2003 of violating the harassment injunction, was sentenced to 90 days in jail, and was released in September 2003.

- The Gainors again began receiving numerous "crank calls" in September 2003.

- Conner was in jail on an unrelated matter between October 2003 and February 2004 and the Gainors experienced no harassing conduct during this period.

- After Conner had been released from jail in February 2004, the Gainors once again began receiving crank calls from an unidentified caller.

- On January 6 or 7, 2005, James's vehicle was keyed.

- During November 2005, crank calls from an unidentified caller to James at work escalated, as did calls to Rhonda's parents, and James filed a report with police.

458

- On November 30, 2005, James confronted Conner after he observed her keying his vehicle.

¶ 7. In addition, Joy Stolz testified that she observed Conner key Stolz's vehicle in October 2003. Conner's attorney stated that Conner was prepared to stipulate that Conner keyed Stolz's vehicle and was convicted for it. However, the court permitted the State to complete its examination of Stolz and the facts surrounding the incident.

¶ 8. Although the court initially admitted the evidence regarding Conner's prior acts directed at the Gainors as other acts evidence, by the close of trial the court had reached the conclusion that the evidence was properly admitted to establish the course of conduct element of the offense. Among the jury instructions given, the court instructed the jury as to the acts which it could find constituted a course of conduct, all of which are set forth in WIS. STAT. § 940.32(1)(a). The court enumerated nine of the eleven acts under the statute which it deemed potentially applicable:

- Maintaining a visual or physical proximity to the victim.
- Approaching or confronting the victim.
- Appearing at the victim's home or contacting the victim's neighbors.
- Entering property owned, leased or occupied by the victim.
- Contacting the victim by telephone or causing the victim's telephone or any other person's telephone to ring repeatedly or continuously regardless of whether a conversation ensues.
- Photographing, videotaping, audiotaping, or, through any other electronic means, monitoring or recording the activities of the victim.

459

- Sending material by any means to the victim, or, for the purpose of obtaining information about, disseminating information about, or communicating with the victim, to a member of the victim's family or household or an employer, coworker or friend of the victim.

- Placing an object on or delivering an object to property owned, leased or occupied by the victim.

- Causing a person to engage in any of the acts described above.

The State's closing argument proceeded in accordance with the jury instructions. During the argument, the prosecutor referred both to Conner's prior conviction for violation of the harassment injunction in 2003, as well as to acts which occurred both prior to and after the conviction, which the State contended established Conner's course of conduct with respect to the Gainors.

¶ 9. Conner was convicted of count one—stalking James, and was acquitted of counts two and three—stalking Rhonda and causing criminal damage to property. Conner moved for judgment notwithstanding the verdict, which was denied. She also sought postconviction relief, which was also denied. Conner appeals. We reference additional facts as needed in the discussion below.

## DISCUSSION

¶ 10. Conner raises three issues on appeal: (1) the plain meaning of Wis. Stat. § 940.32(2m)(b) requires that the two acts constituting the course of conduct subjecting her to an enhanced penalty must have occurred after her most recent prior conviction in 2003; (2) the circuit court erred in admitting the other acts evidence, both with respect to the acts against the

Gainors and with respect to Conner's keying of the Stolz vehicle; and (3) she did not receive adequate notice of the stalking charge. We address each in turn.

TIME FRAME FOR COURSE OF CONDUCT WITHIN
THE MEANING OF WIS. STAT. § 940.32(2m)(b)

¶ 11. WISCONSIN STAT. § 940.32 creates three distinct classifications of stalking offenses. *See State v. Warbelton*, 2009 WI 6, ¶ 24, 315 Wis. 2d 253, 759 N.W.2d 557. Subsections (2) and (2e) each set forth separate requirements for Class I felony stalking. Relevant to this appeal is sub. (2), which provides that to be guilty of stalking, a defendant must have "engage[d] in a course of conduct directed at a specific person" and that the actor "knows or should know that at least one of the acts that constitute the course of conduct will cause the specific person to suffer serious emotional distress." "Course of conduct" is defined as "a series of 2 or more acts carried out over time, however short or long, that show a continuity of purpose." Section 940.32(1)(a). Subsection (2m) enumerates five factors which elevate a stalking offense under sub. (2) to a Class H felony. Subsection (3) enumerates three factors which elevate a stalking offense under sub. (2) to a Class F felony.[7]

¶ 12. The stalking offense at issue in this appeal is WIS. STAT. § 940.32(2m)(b), which elevates the crime of stalking under sub. (2) to a Class H felony if the

---

[7] The penalty for a Class I felony is "a fine not to exceed $10,000 or imprisonment not to exceed 3 years and 6 months, or both"; the penalty for a Class H felony is "a fine not to exceed $10,000 or imprisonment not to exceed 6 years, or both"; and the penalty for a Class F felony is "a fine not to exceed $25,000 or imprisonment not to "exceed 12 years and 6 months, or both." WIS. STAT. § 939.50(3)(f), (h) and (i).

defendant has a prior conviction for any offense against the same victim within the past seven years. It provides as follows:

> **(2m)** Whoever violates sub. (2) is guilty of a Class H felony if any of the following applies:
>
> . . . .
>
> (b) The actor has a previous conviction for a crime, the victim of that crime is the victim of the present violation of sub. (2), and the present violation occurs within 7 years after the prior conviction.

■

¶ 13. Conner contends that under the plain meaning of these provisions, once an individual has been convicted of a crime involving the same victim, the perpetrator must, within seven years of the prior offense, have committed at least two subsequent acts constituting a course of conduct in order to be subjected to the subsection's enhanced penalty. Thus, Conner argues that the acts used to establish the crime of stalking under WIS. STAT. § 940.32(2m)(b) must be confined to acts which occurred after her June 2003 conviction for violating the Gainors' restraining order. The State takes the position that under the plain meaning of these provisions, the course of conduct may include acts that occurred prior to Conner's June 2003 conviction.

■

¶ 14. The question of whether a defendant was denied the due process right to a fair trial is a question of law that we review de novo. *See State v. Hoover*, 2003 WI App 117, ¶ 29, 265 Wis. 2d 607, 666 N.W.2d 74. So too is our analysis of the applicable time frame for determining the course of conduct under which Conner was charged, which presents an issue of statutory

construction. *Heritage Farms, Inc. v. Markel Ins. Co.*, 2009 WI 27, ¶ 5, 316 Wis. 2d 47, 762 N.W.2d 652. In interpreting a statute, we attempt to discern the legislature's intent. *State v. Schwebke*, 2002 WI 55, ¶ 26, 253 Wis. 2d 1, 644 N.W.2d 666. We begin by looking at the plain language of the statute "because we assume that the legislature's intent is expressed in the words it used." *State v. Doss*, 2008 WI 93, ¶ 30, 312 Wis. 2d 570, 754 N.W.2d 150 (citation omitted). In addition, we interpret statutory language in the context in which it is used, "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 15. If our process of analysis reveals a plain, clear statutory meaning, then there is no ambiguity and thus no need to consult extrinsic sources of interpretation, such as legislative history. *Id.* "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶ 47.

¶ 16. We focus our inquiry on the wording in WIS. STAT. § 940.32(2m)(b) which applies an enhanced penalty in situations in which the "present violation of sub. (2)" occurs within seven years after a prior conviction for a crime against the same victim. Under Conner's view, the term "present violation of sub. (2)" means that each of the two or more acts making up a course of conduct must occur within seven years of the defendant's prior conviction. Under the State's view, the term means that the final act constituting a course of conduct must occur within seven years of the defendant's prior conviction, although the preceding act or acts may have occurred prior to that time. Stated differently, the State reads the

statute to contemplate that the seven years applies to the date upon which the crime of stalking is *completed,* which of necessity means the date upon which at least the second act (constituting a course of conduct) occurs. We conclude that the provision is capable of being reasonably understood in either sense, and is thus ambiguous.

¶ 17. Because we find ambiguity, we turn to evidence of the underlying purposes of the scheme of enhanced penalties for stalking as they are set out in the statutes. In *Warbelton,* 315 Wis. 2d 253, ¶¶ 33–34, the supreme court ruled that the facts enumerated in the four subsections under Wis. Stat. § 940.32(2m) are essential elements of the stalking violation, rather than penalty enhancers. The court referred to the underlying reasoning that led to the adoption of the stalking statutes nationwide, including Wisconsin, in the early 1990s.[8] It cited language from an article published by the National Institute of Justice which noted, "Stalkers may be obsessive, unpredictable, and potentially violent. They often commit a series of increasingly violent acts, which may become suddenly violent, and result in the victim's injury or death." *Id.,* ¶ 36 (citing Nat'l Inst. of Justice, U.S. Dep't of Justice, *Project to Develop a Model Anti-Stalking Code for States* 49 (1993)). In light of the nature of the stalking offense, the Institute advocated that states establish a "continuum of charges that could be used by law enforcement officials to intervene at various stages." *Id.,* ¶ 37 (citing *Project to Develop a Model Anti-Stalking Code for States* at 49). The supreme court observed that Wisconsin has done precisely that through its statutory scheme that delin-

---

[8] The Wisconsin stalking statute was adopted in 1993. *See* 1993 Wis. Act 96, § 2.

eates three degrees of stalking depending on the presence of aggravating factors. *Id.*, ¶ 39.

¶ 18. Conner's interpretation of Wis. Stat. § 940.32(2m)(b) is inconsistent with the reasoning underlying the statute. Under her view, if a person has a long history of harassing a victim without an ensuing conviction and is then convicted of any type of crime against the victim, none of the previous stalking behavior can be considered in seeking an enhanced penalty under sub. (2m)(b) for a new stalking offense if any of the prior acts occurred more than seven years before the present offense. The conviction would effectively serve to sever the continuum of stalking behavior that could be taken into consideration in making the charging decision, and would permit the consideration of only certain of the acts closer in time to the presently charged offense. Conner's interpretation would frustrate the purpose of authorizing law enforcement to intervene at any point along a continuum of aggravated behavior committed by a person with a history of harassment and stalking, who may suddenly become violent. Thus, the State's construction of the statute is the more reasonable result in light of the statutory scheme here at issue.[9]

¶ 19. We conclude that the seven year time restriction specified in Wis. Stat. § 940.32(2m)(b) requires that only the final act charged as part of a course of

---

[9] Because we are able to clarify legislative intent with respect to the disputed provision, the rule of lenity, which provides that ambiguous penal statutes should be interpreted in favor of the defendant, does not come into play. *See State v. Cole,* 2003 WI 59, ¶ 67, 262 Wis. 2d 167, 663 N.W.2d 700 (rule of lenity comes into play when two conditions are met: (1) the penal statute is ambiguous; and (2) we are unable to clarify the intent of the legislature).

conduct occur within seven years of the previous conviction, and does not restrict by time the other acts used to establish the underlying course of conduct element of sub. (2).[10] In the present case, there is no dispute that the final act charged, the keying of the Gainors' vehicle, occurred within seven years of Conner's previous conviction, and the jury properly considered the entire history of acts undertaken by Conner against James, showing a continuity of purpose, to establish Conner's course of conduct.[11]

## OTHER ACTS EVIDENCE

¶ 20. Conner argues that the circuit court improperly admitted, as other acts evidence, evidence of acts Conner committed against the Gainors dating back to the year 2000 and the acts underlying Conner's prior conviction for keying Stolz's vehicle. "[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." WIS. STAT. § 904.04(2). However, other acts evidence may be admissible if offered for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

---

[10] We note that the fact that WIS. STAT. § 940.32(1)(a) requires a "continuity of purpose" with respect to acts comprising a course of conduct serves to delimit the applicable time period.

[11] Conner also argues that the prosecutor's closing argument improperly informed the jury that in determining whether Conner engaged in a course of conduct, it could consider acts committed by Conner which occurred before Conner's June 2003 conviction. Because we conclude that these acts may be considered as part of the course of conduct requirement of WIS. STAT. § 940.32(2), we similarly conclude that the prosecutor's argument was not improper.

■

¶ 21. To determine the admissibility of other acts evidence, a three-part test inquiry is employed. *State v. Sullivan*, 216 Wis. 2d 768, 771–72, 576 N.W.2d 30 (1998). The first step is an evaluation of whether the evidence is to be introduced for a permissible purpose under Wis. Stat. § 904.04(2). *Id.* at 772. The second step is an evaluation of whether the evidence is relevant under Wis. Stat. § 904.01. *Id.* The third step is an evaluation of whether, as required by Wis. Stat. § 904.03, the probative value of the evidence is outweighed by the danger of unfair prejudice. *Id.* at 772–73.

■

¶ 22. The admission of evidence is generally a discretionary decision for the circuit court. *Id.* at 780. We will sustain the court's evidentiary ruling if we find that the court "examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach." *Id.* at 780–81.

*Acts Relating to the Gainors*

¶ 23. The circuit court initially ruled that evidence of Conner's acts relating to the Gainors between 2000 and 2005 was admissible under Wis. Stat. § 904.04(2) for the purpose of establishing motive, and also for the purpose of establishing context because the evidence would provide background to the relationship between the parties. Conner argues that this ruling was improper because evidence of prior harassing conduct does not demonstrate a motive for later harassing conduct and, therefore, the evidence was admitted for an improper purpose.[12]

---

[12] Conner does not address the admissibility of the evidence for the purpose of establishing context.

¶ 24. In response, the State contends that the evidence of Conner's prior acts against the Gainors was not other acts evidence within the meaning of Wis. Stat. § 904.04(2), but was instead evidence offered to establish a course of conduct, which is an element of the stalking offense. The State observes that "[t]he problem acts such as these present is that proof of the specific acts appears the same whether offered to prove character or to prove a required element in the State's case." The State stresses, however, that because the evidence was not offered to prove Conner's character in order to show that she has a propensity to act a certain way, it was not barred by § 904.04(2). We agree.

¶ 25. Although the circuit court initially permitted the admission of the evidence in order to prove motive and to provide context, the court later ruled that the evidence was admissible to establish the course of conduct element of the offense of stalking.[13] Evidence of Conner's prior actions between 2000 and 2005 was direct proof of that course of conduct and, as we explained in paragraphs 17–19 above, the acts comprising a defendant's course of conduct are not limited to a particular time frame. *See* Wis. Stat. § 940.32(2) and (2m)(b).

¶ 26. Aside from being offered for an admissible purpose, to be admissible, all evidence must also be relevant and not unfairly prejudicial. *See* Wis. Stat. §§ 904.02 and 904.03. There is no question that "evidence which serves to prove an element of a crime is relevant." *State v. Alexander*, 214 Wis. 2d 628, 641, 571 N.W.2d

---

[13] The circuit court also repeated its ruling to this effect when denying Conner's postconviction motion for a new trial.

662 (1997). Thus, the evidence of Conner's prior acts against the Gainors was plainly relevant.

██ ██

¶ 27. Conner argues that she stipulated to the prior convictions necessary to establish the status element of WIS. STAT. § 940.32(2m)(b), and therefore the detailed testimony regarding the numerous calls and threats, harassing behavior and vehicular damage were unnecessary and unfairly prejudicial. It is true that Conner's stipulation to the conviction would have been sufficient to satisfy the *prior conviction* element of § 940.32(2m)(b), and would have made further evidence of that conviction superfluous and unfairly prejudicial. *See Old Chief v. United States,* 519 U.S. 172, 117 S. Ct. 644 (1997) (concluding that a court abused its discretion by admitting evidence of a prior felony when the defendant offered to stipulate that he had a prior felony conviction). However, the stipulation did not eliminate the need for the State to present evidence proving Conner engaged in a *course of conduct* directed at James and Rhonda. The holding in *Old Chief* applies only to a defendant's status, "not to any element of the criminal act forming the basis for the current charge." *State v. Veach,* 2002 WI 110, ¶ 124, 255 Wis. 2d 390, 648 N.W.2d 447. The general rule is that "the prosecution is entitled to prove its case by evidence of its own choice" and "that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Old Chief,* 519 U.S. at 186–87. Because a course of conduct is not a status element, the general rule applies in the present matter. Accordingly, we conclude that the probative value of this evidence outweighed any prejudicial effect and that the evidence was properly admitted.

*Acts Relating to Keying the Stolz Vehicle*

¶ 28. With respect to the criminal damage to property charge, the circuit court ruled that testimony regarding the acts underlying Conner's conviction for causing criminal damage to Stolz's vehicle was other acts evidence admissible for the purpose of establishing identity by *modus operandi*. At trial, Stolz testified as to the manner in which Conner damaged her vehicle, which was similar to the manner in which Conner allegedly damaged James's vehicle. Stolz also testified as to Conner's method of disguise, which was similar to the description of Conner's attire when she allegedly keyed James's vehicle.

¶ 29. Conner does not contend that the purpose for admitting this evidence was improper under WIS. STAT. § 904.04, nor does she argue that the evidence was unfairly prejudicial under WIS. STAT. § 904.03. She does, however, argue that this evidence was not relevant because her identity at the scene of the keying incident was not at issue and because her identity "was not an issue at trial." The State responds that identity was at issue because at the scene of the incident and during her testimony at trial, Conner denied that she had keyed James's vehicle. We agree with the State that Conner's identity was at issue and, therefore, conclude that the evidence was properly admitted for purposes of proving that issue.

ADEQUATE NOTICE OF CHARGES

¶ 30. Finally, Conner argues that because the information charging her with stalking under WIS. STAT. § 940.32(2m)(b) only referenced the November 30, 2005

date on which James's vehicle was keyed, she was not given notice that acts committed on prior occasions also formed the basis of the two stalking charges, which she claims was a violation of her due process rights.[14] She contends that although count three of the information charging her with criminal damage to property was sufficient, counts one and two of the information charging her with stalking were insufficient because they did not inform her that these offenses were grounded in part on conduct which occurred on a date other than November 30, 2005.

■■■

¶ 31. The supreme court has explained,

> Procedural due process requires that a defendant have notice of a specific charge and an opportunity to be heard at trial on the issues raised by the charge. The purpose of the information is to inform the defendant of the charges against him. Notice is the key factor.

*Manson v. State*, 101 Wis. 2d 413, 431, 304 N.W.2d 729 (1981) (citations omitted). Our review of the sufficiency of a pleading presents a question of law that we review independently. *See State v. Chambers*, 173 Wis. 2d 237, 251, 496 N.W.2d 191 (Ct. App. 1992).

¶ 32. Citing *State v. Kaufman*, 188 Wis. 2d 485, 492, 525 N.W.2d 138 (Ct. App. 1994) (citation omitted),

[14] Conner contends that the charges contained in the Information violated her due process rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and article I, sections 7 and 8 of the Wisconsin Constitution. The Sixth Amendment provides in part: "[T]he accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." Article I, section 7 of the state constitution provides in part "[T]he accused shall enjoy the right . . . to demand the nature and cause of the accusation against him."

Conner argues that the information must inform the accused of "the time frame in which the crime allegedly occurred." While this may be true as a general proposition, the facts in *Kaufman* are readily distinguishable from those in the present case. Kaufman was charged with two counts of welfare fraud for receiving public assistance and intentionally failing to notify the Department of Social Services within ten days of a change of fact as originally stated in her application for public assistance. *Id.* at 488. Count one of the information alleged a time period between June 21, 1991, and September 22, 1991. *Id.* The State argued, however, that the crime charged was a continuing offense which began prior to June 21. We concluded that the information did not provide Kaufman with adequate notice of the charges against her because, in that situation, the State had the discretion to decide whether to charge the crime as one continuous offense, a single offense, or a series of single offenses, and the information did not notify her that she would have to prepare a defense to a continuing violation. *Id.* at 491–92.

¶ 33. The present situation is different. Here, a course of conduct is an element of the charged offense, not a charging option within the State's discretion. The law does not require that the information specify with particularity upon which dates the course of conduct occurred, and Conner provides no authority for such a requirement. The supreme court has stated that "[i]n drafting an information the state should not have to spell out every act which would comprise an element of the crime . . . ." *Wilson v. State*, 59 Wis. 2d 269, 275–76, 208 N.W.2d 134 (1973). Instead, allegations of the elements of the crime charged will suffice. *Id.* at 276.

¶ 34. Pursuant to Wis. Stat. § 940.32(2m)(b), a defendant is guilty of stalking with a previous conviction within seven years if:

> (1) the defendant intentionally engaged in a course of conduct directed at the victim;

> (2) the course of conduct would have caused a reasonable person to suffer serious emotional distress or fear bodily injury to himself, herself or a member of his or her household;

> (3) the defendant's acts caused the victim to suffer serious emotional distress;

> (4) the defendant knew or reasonably should have known that the conduct would cause a reasonable person under the same circumstances to suffer serious emotional distress;

> (5) the defendant had a previous conviction for a crime;

> (6) the victim of the previous crime is the victim in the present case; and

> (7) the crime in the present case occurred within seven years after the previous conviction.

The information alleged that:

> (1) Conner intentionally engaged in a course of conduct directed at James;

> (2) her conduct would have caused a reasonable person to fear bodily injury or death;

> (3) her conduct caused James to fear bodily injury or death;

473

(4) Conner knew or reasonably should have known that her conduct would cause a person to fear bodily injury or death;

(5) Conner had a previous conviction for a crime;

(6) James, the victim of the previous crime, is the victim in the present case; and

(7) the crime in the present case occurred within seven years after the previous conviction.

Each of the elements of stalking under § 940.32(2m)(b) were present in the information. The pleading is therefore compliant with the requirements articulated in Wilson. To the extent that Conner was unaware that the applicable course of conduct could properly include acts that occurred on dates prior to November 30, 2005, her misapprehension was attributable to an incorrect reading of § 940.32(2m)(b) rather than to an insufficient information. Accordingly, we conclude that Conner had notice of the charges against her and that her due process rights were not violated.

## CONCLUSION

¶ 35. For the reasons discussed above, we affirm the judgment of conviction and order denying Conner postconviction relief.[15]

*By the Court.*—Judgment and order affirmed.

[15] The State contends that Conner did not timely object to the prosecutor's closing argument and notice of the charged offenses and thus has forfeited these objections. However, because we have affirmed the judgment and order of the circuit court, we do not reach these arguments.