PER CURIAM.
¶1 Laymon Quendell Price appeals a judgment of conviction entered after a jury found him guilty of three counts of kidnapping by use of a dangerous weapon and five counts of first-degree sexual assault. He contends that the circuit court erroneously admitted other acts evidence at his trial. We affirm.
Background
¶2 The State charged Price in 2014 with kidnapping and sexually assaulting two women, B.S.T. and Y.M.G. We begin with a review of the allegations underpinning those charges.
¶3 B.S.T., twenty-one years old, was walking alone near the 1400 block of West North Avenue in Milwaukee, Wisconsin, at approximately 5:00 a.m. on June 16, 2008. A man she did not know approached her in a car and asked her if she wanted a ride. She accepted the stranger's offer and got in the car. After a short drive, he produced a box cutter, held it to her neck, and demanded sex. The man acquiesced to her plea that he put on a condom, then forced his penis into her vagina. After the assault, the man allowed her to get out of the car but prevented her from retrieving her purse.
¶4 B.S.T. called police, reported an assault, and described both the assailant and the license plate number of his car. Police identified the owner of the car, went to the owner's apartment, and knocked on the door. Price answered. Police obtained Price's boxer shorts from the apartment, and subsequent DNA testing of biological material on the shorts revealed a mixed DNA profile. B.S.T. and Price were both included as possible contributors to the profile, with the probability of randomly selecting a matching contributor calculated as one in 291,000. The State charged Price with one count of first-degree sexual assault and one count of kidnapping by use of a dangerous weapon. See WIS. STAT. §§ 940.225(1)(b) (2007-08),[1] 940.31(1)(a) (2007-08), 939.63(1)(b) (2007-08).
¶5 Y.M.G., a high school senior, was walking alone at night in the 1400 block of West North Avenue in Milwaukee, Wisconsin, on August 25, 2013, when a man she did not know approached her in a car and asked her if she wanted a ride. When she said no, he displayed a handgun and ordered her to get into the car. The stranger drove the car to a parking lot, seized her by the back of the neck, and forced her to engage in penis-to-mouth intercourse. He went on to hit her and force her to perform a second act of penis-to-mouth intercourse, as well as to engage in an act of penis-to-vagina intercourse and an act of penis-to-anus intercourse. The man then ordered Y.M.G. out of the car. Y.M.G. went to the sexual assault treatment center, where a nurse swabbed Y.M.G.'s mouth. Examination of the swabs revealed the presence of semen, and DNA testing showed that Price was the source. The State charged Price with four counts of first-degree sexual assault and two counts of kidnapping by use of a dangerous weapon. See WIS. STAT. §§ 940.225(1)(b), 940.31(1)(a)-(b), 939.63(1)(b).
¶6 Price previously was acquitted by a jury of sexually assaulting two other women, A.M. and A.H. During pretrial proceedings in the instant case, the State moved to admit evidence of those prior assaults. A summary of that evidence is also required.
¶7 A.M., twenty-six years old, was walking alone near the 1300 block of West North Avenue in Milwaukee, Wisconsin, early in the morning of August 2, 2010. A man she did not know approached her in a car and asked her if she needed a ride. She got into the car, and he agreed to take her home. As they drove, he grabbed her neck, pushed her head into his lap, and forced her to perform penis-to-mouth intercourse by threatening that if she did not comply he would shoot her. The man then stopped the car and forced her to have penis-to-vagina intercourse and again to perform penis-to-mouth intercourse. The man also tried to assault her anally, but she was able to get out of the car and run from him. As she ran, she saw a police car, flagged it down, and reported to the officer what had happened to her. The officer brought her to the sexual assault treatment center, where a nurse swabbed A.M.'s body and clothing. Testing of the anal swabs and the swabs of A.M.'s underwear revealed the presence of semen, and DNA analysis showed that Price was the source.
¶8 A.H., twenty years old, was walking alone on 11th Street and West North Avenue in Milwaukee, Wisconsin, late on the night of January 26, 2011. A man she did not know passed her on foot, then struck her in the face with a gun and ordered her to give him her "stuff." She gave him her money, and he then ordered her to pull down her pants. Next, he grabbed her neck, pushed her forward, and forced his penis into her vagina. After the assault, the man fled. A.H. went to a hospital, where a nurse collected a vaginal swab. Analysis of the swab revealed the presence of semen, and DNA testing showed that Price was the source.
¶9 Price objected to admitting evidence of the assaults involving A.M. and A.H., arguing, as relevant here, that the evidence did not satisfy the analysis required by WIS. STAT. § 904.04 before other acts may be admitted at trial. The circuit court disagreed and granted the State's motion.
¶10 The charges involving B.S.T. and Y.M.G. proceeded to trial in June 2014, and the jury found Price guilty as charged of assaulting and kidnapping both women. He appeals, challenging only the admission of the other acts evidence.
Discussion
¶11 Price claims that the circuit court improperly applied WIS. STAT. § 904.04(2). The statute provides that, with an exception not relevant here, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." See § 904.04(2)(a). The statute, however, "does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. Whether to admit other acts evidence lies within the circuit court's discretion. See State v. Sullivan , 216 Wis. 2d 768, 780, 576 N.W.2d 30 (1998). Our review is deferential: if the record reveals a basis for the circuit court's decision, we must uphold it. See State v. Payano , 2009 WI 86, ¶ 41, 320 Wis. 2d 348, 768 N.W.2d 832.
¶12 A circuit court conducts a three-step inquiry to determine the admissibility of evidence under WIS. STAT. § 904.04(2). See Sullivan , 216 Wis. 2d at 772. The circuit court must determine whether: (1) the evidence is offered for a permissible purpose, as required by § 904.04(2)(a) ; (2) the evidence is relevant within the meaning of WIS. STAT. § 904.01 ; and (3) the probative value of the evidence is substantially outweighed by unfair prejudice or other concerns enumerated in WIS. STAT. § 904.03. See Sullivan , 216 Wis. 2d at 772-73.
¶13 Additionally when, as here, the defendant is on trial for a serious sex offense, " WIS. STAT. § 904.04(2)(b)1. permits circuit courts to admit evidence of other, similar acts ... with greater latitude, as that standard has been defined in the common law, under Sullivan ." See State v. Dorsey , 2018 WI 10, ¶¶ 26, 35 & n.20, 379 Wis. 2d 386, 906 N.W.2d 158. The greater latitude rule operates "to 'facilitate the admissibility of the other acts evidence under the exceptions set forth in WIS. STAT. § 904.04(2)(a).' " See Dorsey , 379 Wis. 2d 386, ¶ 33 (citations and brackets omitted). Therefore, when the rule applies, "circuit courts should admit evidence of other acts with greater latitude under the Sullivan analysis to facilitate its use for a permissible purpose." Dorsey , 379 Wis. 2d 386, ¶ 33.
¶14 The first step of the Sullivan analysis requires an acceptable purpose for the proffered evidence. See Payano , 320 Wis. 2d 348, ¶ 63. "[T]his 'first step is hardly demanding.' " Id. (citation and emphasis omitted). Here, the State proposed admitting the prior acts to show Price's "method of operation, intent, plan, and identity." The State thus identified acceptable purposes for the proposed evidence.
¶15 The second step in the Sullivan analysis requires showing that the other acts evidence is relevant. "Evidence is relevant ... if it relates to a fact or proposition that is of consequence to the determination of the action and if it has probative value." State v. Hammer , 2000 WI 92, ¶ 30, 236 Wis. 2d 686, 613 N.W.2d 629.
¶16 The circuit court concluded that the evidence as to both A.H. and A.M. was relevant to the issue of identity. Identity was a fact of consequence here-and Price does not suggest otherwise-because none of the complainants knew the assailant. See id. As to whether the other acts evidence had probative value, the rule is long standing that evidence of other acts is probative of identity when the evidence has "such a concurrence of common features and so many points of similarity between the other acts and the crime charged that it can reasonably be said that the other acts and the present act constitute the imprint of the defendant." See State v. Fishnick , 127 Wis. 2d 247, 263-64, 378 N.W.2d 272 (1985). " 'The threshold measure for similarity with regard to identity is nearness of time, place, and circumstance of the other act to the crime alleged.' " State v. Gray , 225 Wis. 2d 39, 51, 590 N.W.2d 918 (1999) (citations omitted).
¶17 On appeal, Price concedes that the allegations concerning A.M. "were very similar" to those involving B.S.T. and Y.M.G. In his view, however, the allegations concerning A.H. differed too much from the allegations involving the other three women to be probative of identity. The circuit court disagreed, and so do we.
¶18 First, all four incidents occurred within a small geographic area; the record is undisputed that no incident originated less than three-quarters of a mile from any other. Second, each incident occurred under cover of darkness, either very late at night or very early in the morning. Third, in each incident, the complainant was a young woman, and each young woman was walking alone when she encountered a stranger.
¶19 The details of the assaultive behavior are also similar. Each incident involved an assailant who grabbed or attacked a woman's neck and then engaged in violent sexual activity. B.S.T. described her assailant as holding a box cutter to her neck and aggressively penetrating her vagina with his penis. Y.M.G. described her assailant as threatening her with a gun and grabbing her by the back of the neck before forcefully penetrating her mouth, anus, and vagina with his penis. A.M. described her assailant as grabbing her by the neck to force her to perform oral sex, then penetrating her vagina with his penis and attempting to penetrate her anus. A.H. described her assailant as hitting her with a gun, then grabbing her neck and forcing his penis into her vagina.
¶20 DNA tests following each incident produced similar results. Although none of the four complainants knew Price, his DNA was found in Y.M.G.'s mouth, A.M.'s underwear and anus, and A.H.'s vagina. B.S.T.'s DNA profile and Price's DNA profile were found mixed together in his boxer shorts.
¶21 Although on appeal Price does not discuss temporal proximity as a factor in assessing the similarity of other acts evidence, we have considered this component of the analysis. See Gray , 225 Wis. 2d at 51. The incident involving A.H. occurred on January 26, 2011, separated by roughly two and one half years from the incidents involving B.S.T. in June 2008, and Y.M.G. in August 2013. The incident involving A.M. occurred on August 2, 2010, a little more than two years after the incident involving B.S.T. and three years before the incident involving Y.M.G. In light of the greater latitude of proof applicable to the analysis here, and in light of the similarities among the offenses, the incidents involving A.H. and A.M. were sufficiently proximate to the offenses involving B.S.T. and Y.M.G. as to assist in determining identity. See, e.g. , State v. Clark , 179 Wis. 2d 484, 495, 507 N.W.2d 172 (Ct. App. 1993) (three-year interval "relatively short"); see also State v. Plymesser , 172 Wis. 2d 583, 596, 493 N.W.2d 367 (1992) (allowing a thirteen-year interval between the other act and the charged assault); State v. Kuntz , 160 Wis. 2d 722, 747-48, 467 N.W.2d 531 (1991) (sixteen-year interval allowed); State v. Mink , 146 Wis. 2d 1, 16, 429 N.W.2d 99 (Ct. App. 1988) (twenty-two-year interval allowed).
¶22 Price emphasizes that the assault of A.H. did not involve a vehicle while each of the other complainants said that her assailant approached her in a car. To be relevant on the issue of identity, however, other acts evidence needs only to be similar to the criminal conduct for which the defendant is on trial, not identical in every particular. See Gray , 225 Wis. 2d at 51. Here, the crimes were alike in a striking number of ways. The small geographic area, the time of night, the attack by a stranger, the characteristics and circumstances of the victims, the violent nature of the assaults, and DNA linking Price to each victim are all probative of Price's identity as the perpetrator. In sum, the State satisfied the second step of the Sullivan analysis.
¶23 The third step in the Sullivan analysis requires the defendant to show that the probative value of the proffered evidence is substantially outweighed by the risk of unfair prejudice. See Payano , 320 Wis 2d 348, ¶ 80. Price asserts that he was prejudiced here because he faced evidence that he assaulted four women rather than two. This argument is unavailing. All evidence of other acts offered under WIS. STAT. § 904.04(2) necessarily involves evidence of conduct in addition to the crimes charged. Unfair prejudice, however, refers to " 'whether the evidence tends to influence the outcome of the case by improper means.' " See State v. Marinez , 2011 WI 12, ¶ 41, 331 Wis. 2d 568, 797 N.W.2d 399 (citations and some quotation marks omitted). Price therefore must show that the evidence improperly influenced the jury even though the evidence was admitted for a proper reason and served a relevant purpose. He fails to make such a showing. To the contrary, the record shows that the circuit court instructed the jury not to use evidence of Price's other conduct to conclude that Price had "a certain character trait," or that he was a bad person and for that reason guilty of the offenses charged. We presume that juries follow instructions, and we view a limiting instruction as "an effective means to reduce the risk of unfair prejudice." Id. , ¶ 41.
¶24 Finally, Price argues that he was prejudiced because the other acts evidence included not only the testimony of A.M. and A.H. but also testimony from other witnesses about the assaults of those women. He complains that testimony from those additional witnesses forced him "to spend time and money relitigating" the charges involving A.M. and A.H., for which he had been acquitted. In making this argument, he concedes that pursuant to State v. Landrum , 191 Wis. 2d 107, 112, 122-23, 528 N.W.2d 36 (Ct. App. 1995), a circuit court may properly admit evidence of acts for which the defendant has been acquitted if the acts serve a permissible purpose and if the probative value outweighs the danger of unfair prejudice. Price argues, however, that Landrum does not control the analysis here because in Landrum only the complainant testified, while in this case, the circuit court permitted the State to offer testimony from several professionals, specifically, the DNA analysts, the nurses who examined the complainants, and a police officer to whom A.M. reported her assault.
¶25 Price's effort to distinguish Landrum is unpersuasive, because Price fails to identify anything in that case hinting at a prohibition against multiple witnesses testifying about other acts evidence. Indeed, "[t]he general rule is that 'the prosecution is entitled to prove its case by evidence of its own choice,' " see State v. Conner , 2009 WI App 143, ¶ 27, 321 Wis. 2d 449, 775 N.W.2d 105 (citation omitted), and nothing in Landrum purports to limit that rule. Moreover, the Landrum decision reflects that when the State offers evidence of other acts, the defendant is protected from any undue prejudice by operation of WIS. STAT. § 904.03, which provides that evidence may be excluded if admission risks " 'confusion of the issues, or misleading the jury, or ... undue delay, waste of time, or needless presentation of cumulative evidence.' " See Landrum , 191 Wis. 2d at 119 & n.4 (quoting § 904.03 ). Here, the professionals who testified regarding matters involving A.M. and A.H. described each complainant's condition immediately after the encounter with the assailant and explained the DNA test results. The testimony was thus limited and narrowly focused, and we are satisfied that the circuit court correctly determined that the probative value of that evidence was not outweighed by other concerns.
¶26 In sum, the record reflects that the circuit court properly admitted the other acts evidence, and we therefore reject Price's claim of error. Because we conclude that the circuit court did not err, we do not address the State's alternative claim that any error was harmless. We affirm.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2015-16).

All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise noted.