STATE of Wisconsin, Plaintiff-Respondent,

v.

Janet A. CONNER, Defendant-Appellant-Petitioner.

Supreme Court

*No. 2008AP1296–CR. Oral argument October 6, 2010.*
*—Decided February 9, 2011.*

## 2011 WI 8

(Also reported in 795 N.W.2d 750.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Stephen E. Mays, Mays Law Office, LLC,* Middleton.

For the plaintiff-respondent the cause was argued by *Warren D. Weinstein,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. N. PATRICK CROOKS, J. This is a review of a published court of appeals opinion[1] that affirmed the conviction of Janet Conner for aggravated stalking. Conner appeals the conviction on the following grounds: first, that the way the State charged, and

---

[1] *State v. Conner,* 2009 WI App 143, 321 Wis. 2d 449, 775 N.W.2d 105.

---

was permitted to prove, the elements of the stalking crime violated her constitutional due process guarantee to notice, and second, that the stalking statute provision under which her conviction was elevated from a Class I felony to a Class H felony was incorrectly applied. The questions presented are: 1) whether the charging documents were specific enough to give Conner adequate notice of the alleged conduct constituting the "course of conduct" element of the statute and 2) whether, in the provision describing a Class H felony, the element requiring that the "present violation" occur within seven years of a prior conviction is satisfied where a single post-conviction incident, rather than a series of acts, is alleged in the complaint and information.

¶ 2. To make clear the issues we are deciding, we first set forth important facts concerning the case. In 2005, Conner was charged in a complaint with two counts of stalking James and Rhonda Gainor and one count of criminal damage to property. The charges were in connection with an incident that occurred on the afternoon of November 30, 2005, when James Gainor discovered that his truck, which was parked near the post office where he worked, had been vandalized, with large deep scratches across the hood and doors on both sides. Standing nearby was Conner, a former girlfriend who had admittedly previously warned Gainor to be careful where he parked his vehicles and had threatened to damage them; she had also been convicted of other acts of harassment against him. He drew the obvious inference, and the two had a heated exchange that ended with Conner cursing Gainor and leaving the scene. Conner was subsequently charged with two counts of stalking with a previous conviction within seven years, in violation of Wis. Stat. § 940.32(2) and

(2m)(b)(2003–04),[2] and one count of criminal damage to property in violation of Wis. Stat. § 943.01(1). (The previous conviction referenced in the first charges was for 2003 convictions for three counts of violating a harassment restraining order and two counts of unlawful use of a telephone, all of which arose from acts in 2000 and 2001 that targeted the Gainors.) The case proceeded to trial before the Circuit Court for Richland County, the Hon. Michael J. Rosborough presiding. After a four-day trial, a jury convicted Conner of one count of stalking and acquitted her on the other counts.

¶ 3. Conner challenged the conviction on the grounds that she was not given adequate notice of the allegations she would be defending against because the information identified only a single incident on November 30, 2005, as the basis of the charge and did not specify what two or more acts formed the "course of conduct" element of the crime with which she was charged. She argued that after failing to allege a factual basis for the course of conduct element, the State was then wrongly permitted to prove the course of conduct element of the stalking charge using evidence of acts that were not charged and evidence of acts for which Conner was previously convicted. The State responds that Conner had adequate notice of the allegations against her because a complaint may properly incorporate by reference attached documents, as the complaint in this case did. It explicitly incorporated, among other attached documents, a filing from a previous case that the complaint described as containing "a summary recounting of some of the history of harassment and stalking perpetrated upon [the Gainors] by Janet Conner as related by

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

[the Gainors]." The document listed 27 dates on which specific acts were alleged to have occurred.

¶ 4. Conner also argued that the statute requires the State, in order to show that the conduct was aggravated and constituted a Class H felony, to allege and prove that a course of conduct consisting of two or more acts occurred after the prior conviction, which in this case occurred in 2003, that serves as the basis for the Class H felony designation.[3] At Conner's trial, the circuit court permitted testimony concerning acts that occurred between 2000 and 2005. These acts were initially ruled admissible as other-acts evidence but were later, at the jury instruction conference, construed as admissible for proving the course of conduct element of the stalking charges. Further, the State, in closing, pointed the jury to the November 2005 incident and to two 2003 convictions as evidence to prove Conner's "course of conduct" with regard to the Gainors. The State responds that the chronological requirement of the statute is that the "present violation" have occurred within seven years after the prior conviction and that the "present violation" in this case is the conduct alleged in the complaint, that is, the ongoing course of conduct including the November 30, 2005, incident, which did occur within the required time period.

██

¶ 5. We consider Conner's due process challenge and employ a two-prong test for evaluating the suffi-

---

[3] Wis. Stat. § 940.32(2m)(b) (2003–04) states, "Whoever violates sub. (2) is guilty of a Class H felony if . . . [t]he actor has a previous conviction for a crime, the victim of that crime is the victim of the present violation of sub. (2), and the present violation occurs within 7 years after the prior conviction."

ciency of the charge[4] that addresses constitutionally sufficient notice and exposure to double jeopardy. The challenge here is focused only on the first prong, that of sufficient notice.[5] In Wisconsin, "[a] defendant has the benefit of both the factual allegations required in the complaint and the final statutory charges alleged in the information."[6] It is also settled that a complaint may appropriately incorporate other documents.[7] We hold that by appending and incorporating into the complaint documents listing and specifying the dates of alleged acts, both charged and uncharged, that began in 2000, and by alleging a "course of conduct," the State gave Conner notice of the allegations she would be required to defend against, and therefore there was no violation of Conner's due process right to notice.

¶ 6. As to the application of the statute's language requiring that "the present violation" have occurred "within seven years after the prior conviction," we hold that it was properly applied in this case because in this case the "present violation" was a continuing course of

[4] The test was set forth in *Holesome v. State,* 40 Wis. 2d 95, 102, 161 N.W.2d 283 (1968).

[5] The parties agree that double jeopardy concerns are not, at this point, implicated in this case given that the prior convictions were for crimes other than stalking. As to future implications, at oral argument, the State stated that Conner could not in the future be convicted of stalking using evidence of the same acts again to satisfy an element of the crime. It is therefore not necessary for us to decide that question or address the second prong of the test in this case. The double jeopardy implications are addressed more fully *infra* ¶¶ 30–31 and ¶ 43.

[6] *State v. Copening,* 103 Wis. 2d 564, 576, 309 N.W.2d 850 (Ct. App. 1981).

[7] *State v. Williams,* 47 Wis. 2d 242, 252, 177 N.W.2d 611 (1970).

conduct that included the acts on November 30, 2005, and occurred within seven years after the 2003 convictions for crimes involving the same victim. Contrary to Conner's assertions, the statute does not specify how many acts in that course of conduct must take place after the prior conviction. Conner's reading is at odds with the context of the statute, which defines stalking as acts "carried out over time, however short or long, that show a continuity of purpose."[8] Further, the list of

[8] Wis. Stat. § 940.32(1) states:

(1) In this section:

(a) "Course of conduct" means a series of 2 or more acts carried out over time, however short or long, that show a continuity of purpose, including any of the following:

1. Maintaining a visual or physical proximity to the victim.

2. Approaching or confronting the victim.

3. Appearing at the victim's workplace or contacting the victim's employer or coworkers.

4. Appearing at the victim's home or contacting the victim's neighbors.

5. Entering property owned, leased, or occupied by the victim.

6. Contacting the victim by telephone or causing the victim's telephone or any other person's telephone to ring repeatedly or continuously, regardless of whether a conversation ensues.

6m. Photographing, videotaping, audiotaping, or, through any other electronic means, monitoring or recording the activities of the victim. This subdivision applies regardless of where the act occurs.

7. Sending material by any means to the victim or, for the purpose of obtaining information about, disseminating information about, or communicating with the victim, to a member of the victim's family or household or an employer, coworker, or friend of the victim.

8. Placing an object on or delivering an object to property owned, leased, or occupied by the victim.

acts the statute defines as stalking conduct[9] makes clear that even if we read the statute as Conner suggests, the Class H felony conviction in this case would still be proper because a properly instructed jury could reasonably find that evidence showed that on November 30, 2005, Conner carried out more than one act constituting stalking behavior, and those acts were within seven years after the 2003 conviction involving the same victim.

¶ 7. We therefore affirm the decision of the court of appeals.

## I. BACKGROUND

¶ 8. This case is the second case to arise from the conflict that Conner had with James Gainor that began shortly after their six-month relationship ended in 2000. The testimony of witnesses, including James Gainor and Rhonda Gainor, at the trial detailed years of harassing incidents the Gainors experienced that had escalated from what might initially be considered fairly minor annoyances to disruptive and disturbing actions. At one end of the spectrum were frequent prank phone calls in which the caller hung up immediately, repeated instances when restaurant orders were falsely placed in Gainor's name, and an occasion when the Gainors' wedding reception reservation was cancelled by a caller

9. Delivering an object to a member of the victim's family or household or an employer, coworker, or friend of the victim or placing an object on, or delivering an object to, property owned, leased, or occupied by such a person with the intent that the object be delivered to the victim.

10. Causing a person to engage in any of the acts described in subds. 1. to 9.

[9] *See supra* ¶ 6 n.5 and *infra* ¶ 44.

claiming to speak for the Gainors. At the other were acts that caused serious disruption in the Gainors' daily lives, such as the occasion when a caller stranded James Gainor's stepson at his elementary school by leaving a false message that he was to wait after school to be picked up rather than taking the bus home. Others appeared calculated to cause panic or distress, such as the occasion when a caller left a false message for Rhonda Gainor purportedly from the school nurse that she needed to get to the hospital urgently because her young son was there, and the occasion when a caller taunted her by asking about a friend who had recently died unexpectedly. There were many magazines that arrived at the Gainors' home, obtained by someone submitting bogus subscriptions. There was evidence of repeated personal confrontations. There was evidence of a range of damage to property, too, from the incident when Rhonda Gainor's coat was smeared with nail polish while she had a dental appointment at the dentist's office where Conner worked at the time to acts of vandalism to James Gainor's vehicles. Gainor testified to having arrived at his vehicles on various occasions to find that the windshields had been shattered on two vehicles, that the paint on doors and hoods had been extensively scratched or "keyed," that the air had been let out of the tires, and that door locks on his car and truck had been filled with a super glue-type substance. There was testimony that the harassing phone calls to phones at the Gainors' home, places of work, school and family members' homes had been unrelenting, with the only period of relief coinciding with a period of time when Conner was in jail for other unrelated convictions. There was evidence presented that Conner admitted some of the acts, denied some of the acts, and admitted others after initially denying

them. There was also evidence of nine convictions between 1996 and 2001, several of which were for similar conduct, such as damage to vehicles and harassing phone calls, targeting the Gainors and other persons unrelated to this case. Conner testified; she denied all calls and all damage to the Gainors' vehicles (even calls she had in previous proceedings admitted), though she admitted keying a car in a separate unrelated incident as revenge for having been wronged by a person related to the owner of the car.

¶ 9. For purposes of analysis of the issues before us, there are several key points on that timeline. In 2001, Conner was arrested and charged with violating a restraining order in connection with harassing acts targeting the Gainors. That case is not directly before us, but it is relevant here because a copy of a motion to admit evidence of other acts filed in that case was appended to the complaint in the 2005 stalking case against Conner. That document listed numerous alleged acts of harassing conduct that occurred between July 2000 and September 30, 2001, summarized in the State's brief as follows:

> - James [Gainor] and Conner had been involved in a brief relationship that ended in May 2000.
>
> - James began seeing Rhonda Sugden in 2000.
>
> - Conner began calling James in the first week of July, 2000.
>
> - In October 2000, Rhonda began receiving calls from Conner.
>
> - Conner entered James' home on October 4, 2000, and used his phone to call James, who was at Rhonda's home.

362

- On October 5, 2000, Conner and her sister came to James's property and got into an argument with James. Conner followed Rhonda around.

- On October 6, 2000, Conner came to Rhonda's place of employment and gave her a letter containing accusations about James.

- In October and November, 2000, both James and Rhonda received numerous prank calls; caller I.D. identified the calls as coming from Conner's house and pay phones.

- Conner called Rhonda's daughter and mother numerous times in November and December 2000.

- Conner called James during the first week of December 2000 and stated that she was going to cause problems with Rhonda when the couple attended James's work Christmas party.

- Conner called Rhonda and repeated her threat to cause problems at the Christmas party.

- During the first week of December 2000 James began experiencing vandalism to his vehicle, including [finding that someone had] flatten[ed] his tires.

- On December 15, 2000, James discovered the windshield of his truck smashed.

- On December 25, 2000, Conner warned James to watch where he parked [his car] so that Conner "won't be tempted to" do something to it.

- On January 2, 2001, Conner called Rhonda's place of employment twice claiming to be Rhonda's mother.

- On January 4, 2001, Conner called Rhonda's son's school claiming to be Rhonda and told school officials to keep Rhonda's son off the school bus because she would

363

pick him up. When no one picked her son up, Rhonda had to leave work to pick him up.

- On January 24, 2001, someone called twice attempting to cancel the reservation at the facility hosting [the Gainors'] wedding reception.

- On January 24, 2001, someone called Rhonda's place of employment; after finding out Rhonda was on jury duty, the person called the Richland County Clerk of Court [falsely] claiming to be the school nurse and informed the clerk that Rhonda needed to go to the emergency room as soon as possible. Rhonda was excused from jury duty.

- On January 26, 2001, a man called Rhonda from a pay phone Conner had previously used and threatened James.

- On January 26, 2001, James again discovered the windshield of his vehicle smashed.

- James and Rhonda received numerous magazine subscriptions they had not ordered, [and] received crank phone calls at work, some from Conner's sister.

- On February 16, 2001, the circuit court enjoined Conner from harassing James and Rhonda.

- On September 29, 2001, Conner barged into James's residence and demanded he leave.

- On September 30, 2001, Conner called claiming to be "Monica"; caller I.D. identified the call as coming from Conner's sister's residence.

¶ 10. In 2003, when that case went to trial, the jury convicted Conner of three counts of violating a harassment restraining order. She also was convicted on a no contest plea of two counts of unlawful use of a telephone. The judgments of conviction for those five counts were entered June 30 and August 7 of 2003.

364

¶ 11. In 2005, Conner was charged in a complaint with two counts of stalking and one count of criminal damage to property in connection with the November 30, 2005, incident described above. The charges were two counts of stalking with a previous conviction within seven years in violation of Wis. Stat. § 940.32(2m)(b) and one count of criminal damage to property in violation of Wis. Stat. § 943.01(1). This is the case that gives rise to the instant appeal.

¶ 12. The timeline may also be helpful at the outset in sorting the evidence at issue in this case into the following categories:

(1) There are the acts targeting the Gainors for which Conner was charged in 2001, and of those, the ones for which she was ultimately convicted (unlawful phone calls and violations of a harassment restraining order).

(2) There were acts underlying prior convictions for crimes targeting other victims. Of those, the only acts we concern ourselves with are those the circuit court permitted into evidence in this case. The circuit court permitted, as showing modus operandi, evidence of a conviction for keying the vehicle of a person related to a person with whom Conner was involved in a dispute.[10] The circuit court prohibited evidence of the acts underlying the remainder of the convictions, though the fact of nine prior convictions did come in during Conner's own testimony.

---

[10] The jury instruction regarding this evidence stated that it was for the purpose of identity; Conner did not object to the jury instruction, so we need not address the reason for any apparent discrepancy between the reason given by the court in ruling on the motion and the subsequently given jury instruction.

(3) There were acts of harassment prior to 2001 that never resulted in charges. These included prank calls, flattened tires on Gainor's vehicle, windshields shattered on a truck and car, unauthorized entrance to Gainor's home by Conner, threats to damage property, and the bogus magazine subscriptions sent to the Gainor address. These acts were detailed in the motion to admit other-acts evidence that was filed in a 2001 case, prior to the instant case and recited above.

(4) There were other uncharged acts that the prosecutor alleged Conner had done between 2001 and 2005, such as the dumping of a gallon of paint on Gainor's truck, a vehicle scratched, spray paint sprayed on truck, a car windshield smashed, locks on car and on truck vandalized with glue, car scratched on both sides, and ongoing crank calls to home, work, and the school Gainor's stepson attended. These acts were testified to by the Gainors and other witnesses at trial.

(5) There are the acts alleged to have occurred on November 30, 2005. This conduct was detailed in the complaint dated December 7, 2005. In the police reports appended to the complaint, the incident is described as happening in the midafternoon of November 30, 2005. James Gainor had left his vehicle parked near his workplace, the Richland Center post office, with the intention of having his wife pick him up after work to drive their son to a doctor's appointment in Madison. When he came out of the post office that afternoon, he noticed someone walking around his vehicle and then saw that the vehicle had been scratched on every side, including the hood. He recognized that the person he had noticed next to the truck was Conner and angrily shouted at her that he had seen her scratching the truck. Conner had been walking away from him, but turned to face him and angrily deny that he had seen

366

her do anything; she then went to her own car and drove away. Rhonda Gainor had driven up to pick up James Gainor and witnessed the confrontation, as did Gainor's stepson. The Gainors called the police from a cell phone, reported the incident, and then left to take their child to the doctor. The officer who responded to the scene included in his report that the scratches had left a large quantity of paint chips that he collected as evidence. He also observed fresh footprints in the snow between the curb next to the truck and the sidewalk. The Gainors later gave additional statements to the police, as did Conner.

(6) There are acts alleged to have occurred starting November 3, 2005, and continuing into mid-2006. These included multiple occasions of food orders placed at restaurants in the Gainors' name, calls to Rhonda Gainor's parents' home, a call to Rhonda Gainor's workplace, Wal-Mart, purporting to be Rhonda Gainor and notifying her supervisor that she would not be reporting to work for two weeks, and a taunting call to Rhonda Gainor at work inquiring about a friend who had died that week. This evidence is described in the State's other-acts evidence motion filed in this case.

¶ 13. An understanding of the categories of acts is necessary to an understanding of both of Conner's arguments. The first is that in violation of due process notice requirements, the complaint and information charged stalking crimes that include an element of a "course of conduct," i.e., "a series of two or more acts," yet a single incident on November 30, 2005 is listed as a factual basis for the charges. Conner argues that she had no notice of what specific acts she would be required to defend against as to these charges. Further, the State then was permitted to introduce acts from the first through fourth categories, both convictions and

uncharged acts, as other-acts evidence. Conner's argument, in other words, is that evidence that might properly have been admitted as "other-acts evidence" was essentially converted into evidence of an element of the crime without those acts ever having been properly charged as such.

¶ 14. The second of Conner's challenges concerns the question of which category or categories of acts may be used to prove the "within seven years after the prior conviction" element such that the crime becomes a Class H felony. If the statute requires that a new "course of conduct" must be proved after the 2003 conviction, then the conviction here was not properly obtained, Conner argues, because in this case, the jury was directed to consider the 2003 convictions themselves as fulfilling the course of conduct element for the present charge. Even though there were alleged acts from 2003 through 2005 that might, if proved, otherwise satisfy the requirement, those acts were not charged.

¶ 15. At the circuit court, Conner moved to dismiss the charges on the grounds that the complaint failed to establish probable cause because the single incident could not constitute a "course of conduct." The motion was denied. The State moved to introduce evidence of other crimes, wrongs, or acts, pursuant to Wis. Stat. § 904.04(2)(a) (2005–06).[11] The motion sought to introduce evidence of some uncharged conduct directed at

---

[11] The relevant portion of this statute provides, "Except as provided in par. (b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Wis. Stat. § 904.04(2)(a) (2005–06).

the Gainors and their family and four prior convictions for similar conduct. As noted above, the circuit court permitted the introduction of the evidence related to the Gainors and to the conviction for keying a vehicle in an unrelated case. The jury heard three days of testimony. The prosecution presented the following witnesses in addition to the officers who investigated the case: James and Rhonda Gainor both testified concerning the events of November 30 and the history of events dating to 2000. Their young son, who witnessed the November 30 altercation, also testified. Rhonda Gainor's daughter testified about the calls she had answered at her mother's home during 2000 and 2001, stating that in some calls Conner identified herself and in others she gave a different name, but that the voice had been recognizably hers. Conner's probation officer testified that Conner had given her a statement admitting keying Joy Stoltz's vehicle in 2003. The IT manager from Conner's previous employer testified that he had traced prank calls in 2001 at the request of the sheriff and had determined that they had come from Conner's work phone. Stoltz testified that she had seen Conner keying her vehicle in her driveway at night and then fleeing before the police arrived. She described "deep scratches all on [the] hood, all down the side and on [the] trunk."

¶ 16. Conner testified and presented witnesses including several family members and an acquaintance, as well as the library director, and a payroll custodian from the hospital where she worked who presented evidence that she had not been clocked in on one day in 2003 when a call was allegedly made from her work phone. The defense also, by presenting a computer-generated video reenactment of the November 30 incident and expert testimony about the reenactment,

sought to prove that Conner could not have been near the vehicle, and that the confrontation could not have happened as the Gainors had testified it did. The jury returned a verdict of guilty on the count of stalking James Gainor and verdicts of not guilty on the counts of criminal damage to property and of stalking Rhonda Gainor. Conner brought a motion for judgment notwithstanding the verdict, which was denied, and then appealed the conviction. The court of appeals affirmed the conviction. It reasoned that Conner's notice issue was without merit because the information contained allegations corresponding to each of the elements of stalking in the statute, satisfying the notice requirement, and that Conner's challenge to the application of the statute was without merit because "the final act charged, the keying of the Gainors' vehicle, occurred within seven years of Conner's previous conviction." *State v. Conner,* 2009 WI App 143, ¶ 19, 321 Wis. 2d 449, 775 N.W.2d 105.

## II. STANDARD OF REVIEW

¶ 17. Where the sufficiency of a pleading is challenged on constitutional grounds, it presents a question of law that is reviewed without deference. *State v. Chambers,* 173 Wis. 2d 237, 251, 496 N.W.2d 191 (Ct. App. 1992). The second issue in this case requires interpreting a statute, Wis. Stat. § 940.32(2) and (2m)(b); statutory interpretation presents a question of law, which this court reviews de novo. *State v. Davis,* 2008 WI 71, ¶ 18, 310 Wis. 2d 583, 751 N.W.2d 332.

## III. ANALYSIS

¶ 18. As already noted, there are two issues to resolve in this case. They are 1) whether Conner

received constitutionally adequate notice of allegations relating to the course of conduct element of the stalking statute and 2) whether, in the provision describing a Class H felony, the element requiring that the "present violation" occur within seven years of a prior conviction is satisfied where a single post-conviction incident, rather than a series of acts, is alleged in the complaint and information.

¶ 19. Conner was convicted under Wis. Stat. § 940.32(2) and the conviction became a Class H felony under Wis. Stat. § 940.32(2m)(b). Those provisions state:

> (2) Whoever meets all of the following criteria is guilty of a Class I felony:
>
> (a) The actor intentionally engages in a course of conduct directed at a specific person that would cause a reasonable person under the same circumstances to suffer serious emotional distress or to fear bodily injury to or the death of himself or herself or a member of his or her family or household.
>
> (b) The actor knows or should know that at least one of the acts that constitute the course of conduct will cause the specific person to suffer serious emotional distress or place the specific person in reasonable fear of bodily injury to or the death of himself or herself or a member of his or her family or household.
>
> (c) The actor's acts cause the specific person to suffer serious emotional distress or induce fear in the specific person of bodily injury to or the death of himself or herself or a member of his or her family or household.
>
> . . .
>
> (2m) Whoever violates sub. (2) is guilty of a Class H felony if any of the following applies:

371

. . .

(b) The actor has a previous conviction for a crime, the victim of that crime is the victim of the present violation of sub. (2), and the present violation occurs within 7 years after the prior conviction.

Wis. Stat. § 940.32(2), (2m)(b).

Conner's challenges center on the "course of conduct" element, as noted above. She argues that the State failed to allege a course of conduct as to the charges and failed to allege a new course of conduct following the 2003 convictions as is necessary to elevate the charges to Class H felonies. "Course of conduct" is defined in Wis. Stat. § 940.32(1)(a) as follows:

"Course of conduct" means a series of 2 or more acts carried out over time, however short or long, that show a continuity of purpose, including any of the following:

1. Maintaining a visual or physical proximity to the victim.

2. Approaching or confronting the victim.

3. Appearing at the victim's workplace or contacting the victim's employer or coworkers.

4. Appearing at the victim's home or contacting the victim's neighbors.

5. Entering property owned, leased, or occupied by the victim.

6. Contacting the victim by telephone or causing the victim's telephone or any other person's telephone to ring repeatedly or continuously, regardless of whether a conversation ensues.

6m. Photographing, videotaping, audiotaping, or, through any other electronic means, monitoring or

recording the activities of the victim. This subdivision applies regardless of where the act occurs.

7. Sending material by any means to the victim or, for the purpose of obtaining information about, disseminating information about, or communicating with the victim, to a member of the victim's family or household or an employer, coworker, or friend of the victim.

8. Placing an object on or delivering an object to property owned, leased, or occupied by the victim.

9. Delivering an object to a member of the victim's family or household or an employer, coworker, or friend of the victim or placing an object on, or delivering an object to, property owned, leased, or occupied by such a person with the intent that the object be delivered to the victim.

10. Causing a person to engage in any of the acts described in subds. 1. to 9.

## A. The due process notice claim

█

¶ 20. The framework for analyzing a claim of inadequate notice of charges, set forth in *Holesome v. State,* 40 Wis. 2d 95, 161 N.W.2d 283 (1968), was discussed and put into its constitutional context in *State v. George,* 69 Wis. 2d 92, 230 N.W.2d 253 (1975). The *George* court first noted that "the scope of the state's latitude [with] respect [to alleging with precision the time of the commission of a crime] is restricted by due process and by art. I, sec. 7 of the Wisconsin Constitution and the sixth amendment to the United States Constitution which guarantee to an accused the right to be informed of 'the nature and cause of the accusation.' " *George,* 69 Wis. 2d at 97. It then quoted the test from *Holesome:*

> In order to determine the sufficiency of the charge, two factors are considered. They are whether the accusation is such that the defendant determine whether it states an offense to which he is able to plead and prepare a defense and whether conviction or acquittal is a bar to another prosecution for the same offense.

*Id.*

¶ 21. *Holesome,* in turn, cites its test as originating in several earlier cases including an 1863 case, *Fink v. City of Milwaukee,* 17 Wis. 26 (1863). *Holesome,* 40 Wis. 2d at 102 n.2. In *Fink,* a defendant had been charged with a violation of a city ordinance that created a fine for any person guilty of intoxication, indecent exposure, obscene language, "loud, boisterous or insulting language, tending to incite a breach of the peace," or disorderly conduct. *Fink,* 17 Wis. at 28. As the *Fink* court noted in reversing the judgment, "It will be seen that this ordinance provides for the punishment of five distinct offenses, and it is utterly impossible to determine from the complaint with which one the party was charged." *Id.* It was in this context that the test that came to be known as the *Holesome* test was first set forth:

> Now it is an elementary rule of criminal law, that . . . the facts and circumstances which constitute the offense . . . must be stated with such certainty and precision that the defendant may be enabled to judge whether they constitute an indictable offense or not, in order that he may demur or plead to the indictment accordingly, prepare his defense, and be able to plead the conviction or acquittal in bar of another prosecution for the same offense."

*Fink,* 17 Wis. at 28–29.

In *Fink,* the charging documents failed both prongs of the test because both the ordinance and the charging

document were imprecisely drafted. *Id.* The court also noted that the record would not indicate for what specific offense the defendant would have been convicted. *Id.* at 28.

¶ 22. Conner concedes that she had sufficient notice as to the November 30 incident, and at oral argument conceded in response to questioning from the court that a prosecution based on a theory that her conduct on that date satisfied the "course of conduct" element would not be challengeable on these grounds. She argues, however, that as the case was actually tried and argued to the jury, she did not have notice that certain evidence would ultimately be used to satisfy the course of conduct element because the State was improperly allowed at trial to expand the scope of the offense to a course of conduct spanning five years.[12]

¶ 23. Conner argues that under the notice prong of the test, the facts of this case parallel those of *Kaufman,* a case where the court of appeals reversed a judgment because the State had charged an offense as having occurred between two specified dates and then sought to treat the offense as a continuing violation, introducing evidence from prior dates. *State v. Kaufman,* 188 Wis. 2d 485, 491–93, 525 N.W.2d 138 (Ct. App. 1994). The *Kaufman* court held that the State was "bound by the time period specified in the information." *Id.* at 493. Conner argues that *Kaufman*'s reasoning is applicable here and would bar any use of acts from prior

---

[12] Her other related challenge, that it was improper for the State to be allowed to use the 2003 convictions themselves to satisfy the course of conduct element because the "present violation" must have occurred after the previous conviction, implicates the application of the statute addressed in the second part of the analysis, *see infra* Part III.B.

375

to November 30, 2005, the date given in the complaint, for the purpose of proving the course of conduct element of the charge.

¶ 24. The State counters that the complaint must be given "a common sense reading,"[13] that the information need not repeat facts set forth in the complaint,[14] and that the complaint may incorporate a document,[15] as the complaint against Conner properly did. The complaint attaches and explicitly incorporates:

> 1) police reports of two officers detailing the investigation of the November 30 incident;
>
> 2) a property crime non-consent form related to the November 30 incident, signed by the Gainors; and
>
> 3) a copy of a motion filed in the prior case seeking to admit evidence of other acts by Conner and listing at least 27 specific acts and specifying the date on which each is alleged to have occurred.

■
¶ 25. The test we apply is whether the complaint and information "state[] an offense to which [the defendant] is able to plead and prepare a defense" and "whether a conviction or acquittal is a bar to another prosecution for the same offense." *State v. Copening,* 103 Wis. 2d 564, 573, 309 N.W.2d 850 (Ct. App. 1981). Of the cases in which Wisconsin courts have had occasion to apply the *Holesome* test, the challenge presented here most closely resembles those in which the alleged lack of notice arises from the complaint's

---

[13] *State v. Smaxwell,* 2000 WI App 112, ¶ 5, 235 Wis. 2d 230, 612 N.W.2d 756.

[14] *Copening,* 103 Wis. 2d at 577.

[15] *Williams,* 47 Wis. 2d at 252.

lack of specificity about when in a long period of time the alleged crime took place.[16]

¶ 26. The two cases that are on point[17] involve allegations of illegal conduct that spans a period of time. In the first, *State v. George,* the State had appealed the dismissal of 29 counts charging the defendant with illegally taking bets on football and basket-

---

[16] *State v. George,* 69 Wis. 2d 92, 230 N.W.2d 253 (1975) (affirming circuit court's dismissal of certain counts because "each count covers an expansive period of time without stating at what point or points during that period the alleged crimes were committed"); *State v. Sorenson,* 143 Wis. 2d 226, 421 N.W.2d 77 (1988) (finding no constitutional violation of notice where charging documents alleged an occurrence of sexual contact had occurred during a six-week period of time); *State v. Fawcett,* 145 Wis. 2d 244, 426 N.W.2d 91 (Ct. App. 1988) (finding sufficient notice where charging documents alleged sexual assaults occurring during six months preceding December 1985); *State v. Miller,* 2002 WI App 197, 257 Wis. 2d 124, 650 N.W.2d 850 (finding allegations covering four-year charging period sufficient to permit a defendant to prepare a defense). Two other lines of cases involving notice challenges are those involving convictions for lesser included offenses, as in *Holesome (e.g., Martin v. State,* 57 Wis. 2d 499, 204 N.W.2d 499 (1973)) and those challenging on notice grounds the "on or about [date]" language commonly used in charging documents (*e.g., Blenski v. State,* 73 Wis. 2d 685, 245 N.W.2d 906 (1976); *Thomas v. State,* 92 Wis. 2d 372, 284 N.W.2d 917 (1979)).

[17] Because the cases that involve allegations of sexual assault of a child implicate considerations not relevant to this case, we do not look to the reasoning of those cases as to the notice prong of the test. *See, e.g., Fawcett,* 145 Wis. 2d at 254 ("In a case involving a child victim . . . a more flexible application of notice requirements is required and permitted. The vagaries of a child's memory more properly go to the credibility of the witness and the weight of the testimony, rather than to the legality of the prosecution in the first instance.").

ball games. *State v. George,* 69 Wis. 2d 92, 94–95, 230 N.W.2d 253 (1975). Without giving the specific acts or when they were committed, each of the dismissed counts alleged illegal acts that occurred at some point during periods of time that were as long as four months. *Id.* at 94–96. The court held that the complaint satisfied neither prong of the *Holesome* test and upheld the dismissal of the counts as to the notice prong on the following grounds:

> [I]f the twenty-nine dismissed counts allege continuous offenses they are faulty because they are multiplicitous. If they allege single offenses they are faulty because they are duplicitous, vague and are not sufficient to afford the defendant a basis to plead or prepare a defense.

*Id.* at 99–100.

¶ 27. The second case that is arguably comparable to Conner's is *State v. Kaufman,* which involved two counts of a continuing violation of statutes prohibiting welfare fraud. *Kaufman,* 188 Wis. 2d at 488. There the State alleged a violation spanning the time between June 21 and September 22, 1991, and then sought to broaden the scope of the continuing offense to include evidence from before that period. *Id.* at 491–93. While the challenge in *Kaufman* appears to have been to the sufficiency of the evidence, unlike Conner's challenge, the determination of whether a continuing offense was alleged required an analysis of the sufficiency of the charging documents, and the court's analysis alluded to constitutional notice requirements and cited to the pages of *George* that discuss *Holesome. Kaufman,* 180 Wis. 2d at 490, 492. The court found that the complaint was insufficient because "the State did not allege a date from which the continuing offense allegedly began"

which made it impossible for Kaufman to know that "she would have to prepare a defense to a continuing violation." *Id.* at 492.

¶ 28. The complaint in Conner's case suffers from neither of the problems present in *George* and *Kaufman.* Unlike the faulty charging documents in *George,* for example, the complaint here, with its incorporated documents, listed 27 dates on which specific acts occurred. And unlike the incomplete complaint in *Kaufman,*[18] which failed to give notice of a continuing violation, the complaint against Conner alleged a "course of conduct" and alleged that "the basis for the complainant's charge is contained in the attached police reports . . . , the Property Crime Non-consent Statement signed by James Gainor and Rhonda Sugden and the factual basis contained in the attached Motion to Introduce Evidence of Other Crimes, Wrongs or Acts . . . [in a separate case], all of which are incorporated into this Complaint by this reference and attachments." It is, of course, true that in a stalking case, the acts alleged as part of the course of conduct need not be chargeable as individual criminal offenses. *See State v.*

---

[18] Indeed, the *Kaufman* court contrasted the attempt to improperly expand the prosecution with a complaint in another welfare fraud prosecution, *John v. State,* 96 Wis. 2d 183, 291 N.W.2d 502 (1980), that did not run afoul of notice requirements. *Kaufman,* 188 Wis. 2d at 493. In *John,* the charged violation was alleged to have occurred from April 1, 1972, through June 30, 1977, and the complaint specifically included the time prior to the charged violation, in 1970, when the child falsely being claimed as a household member had actually moved elsewhere. *John,* 96 Wis. 2d at 186. The complaint filed here, like the one in *John,* omitted none of the necessary dates required to give the defendant notice of the allegations.

*Warbelton,* 2009 WI 6, ¶ 36, 315 Wis. 2d 253, 759 N.W.2d 557 ("[S]talking statutes criminalize what otherwise would be legitimate behavior based upon the fact that the behavior induces fear . . . ." (quoting Nat'l Inst. of Justice, U.S. Dep't of Justice, *Project to Develop a Model Anti-Stalking Code for States* 49 (1993))).

¶ 29. It is implicit in Conner's due process challenge that there are necessarily difficulties in defending against allegations of this nature, and that is true; it is equally true that it is difficult to prove them, which is undoubtedly why so much of the alleged conduct the Gainors experienced remained uncharged. Even so, there was evidence in the record from prior cases that Conner admitted making calls to the Gainors in which she did not identify herself, testimony from witnesses who knew Conner's voice that she had been the person making the anonymous calls, evidence that she admitted damaging another person's vehicle by severely scratching it, testimony that video evidence had been introduced in prior cases of Conner making calls that she had denied making, testimony from Conner herself that she had previously lied to police when denying damaging a vehicle, and testimony that when Conner was in jail on unrelated charges, the Gainors had temporary relief from harassing anonymous phone calls and vandalism. In the context of this case, there was further testimony from Conner that she had kept written records of every occasion she saw the Gainors, including the date and location, which, if true, would likely be admissible and would be helpful evidence for her in rebutting untrue allegations.[19] In short, while

___

[19] In applying the *Holesome* test in a case involving allegations of child sexual assault during treatment sessions with a therapist, the court acknowledged "the problem of dimmed

the prosecutor might well have worded the complaint more precisely, there was no constitutional infirmity to the complaint as it was worded because there was no question of what allegations Connor faced. The difficulty presented in mounting a defense here had nothing to do with any technical wording of the complaint, which we noted above, explicitly incorporated by reference a document listing at least 27 specific acts and specifying the date on which each is alleged to have occurred.

¶ 30. The second part of the *Holesome* test deals with the question of double jeopardy. As noted above, in the case from which the *Holesome* test was taken, there were obvious implications for double jeopardy created by the combination of an imprecise charging document and the expansive language of the relevant ordinance, which included a laundry list of prohibited acts. *See supra* ¶ 21. The statute in this case involves a continuous crime, that of stalking, a situation that this court addressed in *George*. There, when applying the *Holesome* test, we stated:

> [U]nder the state's theory, each of the dismissed counts charges a continuing crime. The established rule, as stated in 1 Anderson, Wharton's Criminal Law and Procedure (1957), p. 351, sec. 145, is that[] "Only one prosecution may be had for a continuing crime. When an offense charged consists of a series of acts extending over a period of time, a conviction or acquittal for a

memories and the possibility that the defendant may not be able to sufficiently recall or reconstruct the history regarding the allegations"; it thus found it relevant under the facts of that case that the defendant, as the victim's therapist, "had the benefit of his own notes and records documenting the dates of his treatment sessions with [the victim]." *Miller,* 257 Wis. 2d 124, ¶ 35.

crime based on a portion of that period will bar a prosecution covering the whole period . . . ."

*George,* 69 Wis. 2d at 97–98.

¶ 31. In addition, as noted above, at oral argument, the State acknowledged that a future prosecution of Conner for stalking for the same course of conduct would violate double jeopardy protections. In *Fawcett,* in concluding that the second prong of the *Holesome* test had been satisfied, the court noted that "double jeopardy is [not] a realistic threat in this case," and gave as a reason that "the state concedes that Fawcett may not again be charged with any sexual assault growing out of this incident." *Fawcett,* 145 Wis. 2d at 255.

¶ 32. Because the complaint charged a course of conduct and incorporated documents listing detailed acts along with specific dates on which they allegedly occurred, we hold that the complaint and information stated an offense to which Conner was "able to plead or prepare a defense," and we concur with the State that "conviction or acquittal is a bar to another prosecution for the same offense." Under the *Holesome* test, therefore, the complaint was sufficient, and we affirm the court of appeals' decision on that issue.

### B. Statute

■

¶ 33. The issue raised by Conner's second argument concerns the proper application of Wis. Stat. § 940.32(2m)(b), which elevates a conviction for stalking to a Class H felony under specific circumstances, and thus subjects the convicted person to a higher penalty. Conner argues that the language of the statute does not properly apply to the facts of this case; in other

words, even if she is guilty of violating Wis. Stat. § 940.32, the circumstances under which Wis. Stat. § 940.32(2m)(b) applies are not present here.

¶ 34. Those circumstances are set forth in the statute as follows:

> (2m) Whoever violates sub. (2) is guilty of a Class H felony if any of the following applies:
>
> . . .
>
> (b) The actor has a previous conviction for a crime, the victim of that crime is the victim of the present violation of sub. (2), and the present violation occurs within 7 years after the prior conviction.

Wis. Stat. § 940.32(2m)(b).

¶ 35. Conner argues that Wis. Stat. § 940.32(2m)(b) requires that the words "present violation" be read as meaning the current stalking violation. She contends that when read together with the definition of "course of conduct" in the statute,[20] Wis. Stat. § 940.32(2m)(b) is properly read as meaning that "a series of 2 or more acts" must occur "within 7 years after the prior conviction." Here, Conner argues, only one act, the one occurring on November 30, occurred after the prior conviction, and therefore, the portion of the statute making her crime a Class H felony was not properly applied to her. Conner further asserts that the circuit court's improper reading of the statute led to the giving of jury instructions that, contrary to the properly

---

[20] Wis. Stat. § 940.32(1)(a) states, "In this section[] 'Course of conduct' means a series of 2 or more acts carried out over time, however short or long, that show a continuity of purpose . . . ."

given limiting instruction,[21] invited the jury to consider as evidence the acts that the circuit court had initially admitted as other-acts evidence. This was so because the jury instruction given, Wisconsin Jury Instruction —Criminal 1284, stated in part:

> Acts that you may find constitute a course of conduct are limited to: maintaining a visual or physical proximity to the victim; approaching or confronting the victim; appearing at the victim's home or contacting the victim's neighbors; entering property owned, leased or occupied by the victim; contacting the victim by telephone or causing the victim's telephone or any other person's telephone to ring repeatedly or continuously regardless of whether a conversation ensues; photographing, videotaping, audiotaping, or, through any other electronic means, monitoring or recording the activities of the victim; sending material by any means to the victim, or, for the purpose of obtaining information about, disseminating information about, or communicacting with the victim, to a member of the victim's family or household or an employer, coworker or friend of the victim; placing an object on or delivering an object to property owned, leased or occupied by the victim; causing a person to engage in any of the acts described above.

---

[21] The jury was given the following limiting instruction: "Evidence has been presented regarding other conduct of the defendant for which the defendant is not on trial. Specifically, evidence has been presented that the defendant intentionally caused damage to an automobile owned by Joy Stolz by scratching the paint with a sharp object. If you find that this conduct did occur, you should consider it only on the issue of identity. You may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case."

¶ 36. In contrast, the State points to the text of the statute, which uses the phrase "present violation" rather than the words "course of conduct"; and the context of the statute, which explicitly sets no time period for the acts, but rather states that they may be "carried out over time, however short or long," and must "show a continuity of purpose." Wis. Stat. § 940.32(1)(a), (2m)(b). The State argues that there is no support in the statute for the requirement Conner describes.

¶ 37. The court of appeals concisely summarized the parties' arguments on this score as follows:

> Conner contends that under the plain meaning of these provisions, once an individual has been convicted of a crime involving the same victim, the perpetrator must, within seven years of the prior offense, have committed at least two subsequent acts constituting a course of conduct in order to be subjected to the subsection's enhanced penalty. Thus, Conner argues that the acts used to establish the crime of stalking under Wis. Stat. § 940.32(2m)(b) must be confined to acts which occurred after her June 2003 conviction for violating the Gainors' restraining order. The State takes the position that under the plain meaning of these provisions, the course of conduct may include acts that occurred prior to Conner's June 2003 conviction.

*Conner,* 321 Wis. 2d 449, ¶ 13.

¶ 38. The court of appeals examined the statute in light of this court's decision in *Warbelton,* 315 Wis. 2d 253. The court of appeals cited *Warbelton's* discussion of the Wisconsin legislature's decision to adopt a "statutory scheme that delineates three degrees of stalking depending on the presence of aggravating factors." *Conner,* 321 Wis. 2d 449, ¶ 17. That statutory scheme, *Warbelton* noted, followed a recommendation to state

legislatures from the U.S. Department of Justice concerning stalking statutes, encouraging them to establish a "continuum of charges that could be used by law enforcement officials to intervene at various stages." *Warbelton*, 315 Wis. 2d 253, ¶ 37 (quoting Nat'l Inst. of Justice, U.S. Dep't of Justice, *Project to Develop a Model Anti-Stalking Code for States* 49 (1993)). The court of appeals reasoned as follows:

> Conner's interpretation of Wis. Stat. § 940.32(2m)(b) is inconsistent with the reasoning underlying the statute. . . . [Under her interpretation,] [t]he conviction would effectively serve to sever the continuum of stalking behavior that could be taken into consideration in making the charging decision, and would permit the consideration of only certain of the acts closer in time to the present charged offense.

*Conner*, 321 Wis. 2d 449, ¶ 18.

The court of appeals concluded that "the seven year time restriction specified in Wis. Stat. § 940.32(2m)(b) requires that only the final act charged as part of a course of conduct occur within seven years of the previous conviction, and does not restrict by time the other acts used to establish the underlying course of conduct element of sub. (2)." *Id.*, ¶ 19.

¶ 39. Statutory interpretation is a question of law which we address de novo. *Davis*, 310 Wis. 2d 583, ¶ 18. As we have often recited, our approach to a statute is one in which we focus on the text and the context of the statute:

> Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as

part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results. Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage.

*State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 (internal citations omitted).

¶ 40. The text and context of this statute indicate that the statutory language does not have the meaning Conner suggests.[22] First, there is no language in the provision itself that limits the meaning of "present violation" to a course of conduct that occurs in its entirety only after the earlier conviction. Second, and more persuasively, the surrounding language makes clear that the continuum of conduct—acts "carried out over time, however short or long"—is the essence of a stalking crime; to read the language as Conner does would result in shearing off evidence of a course of conduct that had been continuous and was punctuated by a conviction in 2003, which conviction was itself a part of the continuous conduct the statute criminalizes.

¶ 41. In this case, interpreting a statute reasonably to avoid absurd results and giving reasonable effect to the words of the statute mean that we must avoid a construction that, where the statute's words state explicitly otherwise, would insulate a defendant from liability for certain acts in a course of conduct that spans a period of time during which there has been a

---

[22] The court of appeals took a slightly different path to its conclusion, initially deciding that Wis. Stat. § 940.32(2m)(b) is ambiguous and proceeding to consider evidence of legislative intent. *Conner,* 321 Wis. 2d 449, ¶¶ 16–17. Because we find that the meaning of the statute's text is plain in its context, we need not take that path.

387

conviction. Where the elements of the controlling definition of the crime in the statute have been satisfied, it would frustrate the application of the entire statute to read into (2m)(b) a condition that eliminates certain acts from consideration and severs a course of conduct into what are, in effect, successive courses of conduct. In this case, it would mean that acts by Conner that would otherwise be eligible to prove a course of conduct would be barred from being so used when the statute explicitly states that the acts the finder of fact may consider may span a period of time "however short or long."

¶ 42. Because the statute explicitly states that it applies to acts that occur over a period of time, "however . . . long," and because Conner's construction of the statute would necessarily lead to excising from proper consideration acts in a course of conduct that the language of the statute specifically contemplates covering, we hold that the application of (2m)(b) was correctly applied where the "present violation" was a course of conduct that continued through November 30, 2005.

¶ 43. There are two further points to mention with regard to the acts making up the course of conduct in this case. First, we reiterate that it is not necessary for us to decide the double jeopardy question or address the second prong of the test in this case. Given the facts of this case and our interpretation of the statute, double jeopardy concerns are not implicated by Conner's prosecution on these stalking charges because this is not a situation where successive identical prosecutions for stalking are being undertaken using the same past acts to satisfy the elements of the charges. This court described the principles that guide a double jeopardy analysis in a case we decided in the wake of *U.S. v.*

*Dixon,* 509 U.S. 688 (1993), the 1993 U.S. Supreme Court decision that retreated from *Grady,* a short-lived departure from the established *Blockburger* test, and firmly re-established the *Blockburger* test:

> We believe that *Blockburger,* and the case law developed around it, adequately protect the interests embodied in the Double Jeopardy Clause. Under *Blockburger,* the state cannot successively prosecute a defendant for two offenses unless each offense necessarily requires proof of an element the other does not. Neither can the state prosecute an offense whose elements are "incorporated" into the elements of an offense already prosecuted. Finally, the state cannot relitigate factual issues that have already been adjudicated to the defendant's benefit in an earlier prosecution. These protections ensure that defendants will not be forced to unfairly "run the gauntlet" a second time for the same offense.
>
> Of course, we recognize that the Double Jeopardy Clause's prohibition against "successive prosecutions" protects different interests than does its prohibition against "multiple punishments." Still, we do not believe that these different interests necessarily require or even recommend separate analyses. *Blockburger*'s emphasis on statutory elements is simple and objective. It provides defendants, courts, and prosecutors certainty as to which offenses are the same for double jeopardy purposes. Moreover, it is the approach that best comports with the language of the double jeopardy clause. *Blockburger* is not a perfect test, but it is better than *Grady*'s "same conduct" approach. We hereby follow the United States Supreme Court and adopt the analysis of *Dixon* and *Blockburger* in double jeopardy cases involving successive prosecutions.

*State v. Kurzawa,* 180 Wis. 2d 502, 524–25, 509 N.W.2d 712 (1994) (internal citations omitted).

¶ 44. Second, we note that the alleged acts of November 30, 2005, themselves might well have pro--

389

vided a basis for the jury to find a violation of Wis. Stat. § 940.32(2m)(b) because under the list of acts that may constitute stalking, at least two were alleged to have occurred on that date. A jury that was properly instructed, as the jury was here, might therefore reasonably have found that, looking solely to the elements of the statute and solely to the evidence of the acts alleged on November 30, 2005, Conner had committed "a series of two or more acts" that qualified as stalking. Both parties acknowledged as much at oral arguments before us.

¶ 45. We therefore hold that the statute was properly applied to Conner such that the conviction was for a Class H felony.

## IV. CONCLUSION

¶ 46. A two-prong test for evaluating the sufficiency of the charge addresses constitutionally sufficient notice and exposure to double jeopardy. The challenge here is focused only on the first prong, that of sufficient notice. In Wisconsin, "[a] defendant has the benefit of both the factual allegations required in the complaint and the final statutory charges alleged in the information." *Copening,* 103 Wis. 2d at 576. It is also settled that a complaint may appropriately incorporate other documents. We hold that by appending and incorporating into the complaint documents listing and specifying the dates of alleged acts, both charged and uncharged, that began in 2000 and by alleging a "course of conduct," the State gave Conner notice of the allegations she would be required to defend against, and therefore there was no violation of Conner's due process right to notice.

¶ 47. As to the application of the statute's language about requiring that "the present violation" have

occurred "within seven years after the prior conviction," we hold that it was properly applied in this case because, in this case, the "present violation" was a continuing course of conduct that included the acts on November 30, 2005, and that occurred within seven years after the 2003 convictions for crimes involving the same victim. Contrary to Conner's assertions, the statute does not specify how many acts in that course of conduct must take place after the prior conviction. Such a reading is at odds with the context of the statute in which it appears, which defines stalking as acts "carried out over time, however short or long, that show a continuity of purpose." Further, the list of acts the statute defines as stalking conduct makes clear that even if we read the statute as Conner suggests, the conviction in this case would still be proper because a properly instructed jury could reasonably find that evidence showed that on November 30, 2005, Conner carried out more than one act constituting stalking behavior, and those acts were within seven years after the 2003 conviction involving the same victim.

¶ 48. We therefore affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 49. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). The majority begins by providing an avalanche of Conner's misconduct. In doing so, the majority argues persuasively that Conner engaged in a remarkably massive series of stalking acts. But the issue before the court is whether the conviction for Class H felony stalking was obtained in accordance with the statutory requirements and Conner's due process rights. I conclude it was not.

¶ 50. Wisconsin Stat. § 940.32(2m)(b) elevates a Class I felony stalking offense to a Class H felony. In this case, Conner was charged and convicted of a Class H felony. Section 940.32(2m)(b) states as follows:

> (2m) Whoever violates sub. (2) [describing underlying Class I felony offense of stalking] is guilty of a Class H felony if any of the following applies:
>
> . . . .
>
> (b) The actor has a previous conviction for a crime, the victim of that crime is the victim of the present violation of sub. (2), and *the present violation occurs within 7 years after the prior conviction* (emphasis added).

¶ 51. The statute requires the State to establish three elements to convict Conner of the Class H felony.

¶ 52. First, the State must prove a violation of the stalking statute, which includes proving that the accused engaged in a "series of 2 or more acts carried out over time, however short or long, that show a continuity of purpose . . . ." Wis. Stat. § 940.32(1)(a).

¶ 53. Second, the State must prove that the defendant has a prior conviction for a crime and that the victim of that prior crime is the victim of the present violation of the stalking statute.

¶ 54. Third, the State must prove that the present violation of the stalking statute occurred "within 7 years after the prior conviction."

¶ 55. The disagreement in this case involves the third element: "the present violation occurs within 7 years after the prior conviction." Wis. Stat. § 940.32(2m)(b).

¶ 56. Conner asserts that the statutes require the State to confine the acts used to establish the present

violation of the stalking offense to those acts that occurred after her June 2003 conviction. That is, Conner would restrict the course of conduct in the present violation to a time period consisting of the seven years after the prior conviction involving the same victim.

¶ 57. In contrast, the State asserts that the course of conduct may include acts that occurred before Conner's June 2003 conviction of a crime. That is, the State would not restrict the course of conduct to any time period.

¶ 58. The majority opinion agrees with the State's statutory interpretation, asserting that the definition of "course of conduct" "makes clear" that the "essence" of a stalking crime is acts carried out over time, however short or long. Majority op., ¶ 40. The majority's interpretation of Wis. Stat. § 940.32(2m)(b) places significant weight on the context provided by the plain language of the underlying stalking offense. Majority op., ¶ 44. This context is important to our interpretation of the stalking offense. However, in relying upon the essence of the underlying stalking offense, I believe that the majority overrides the unambiguous language of a more specific element the legislature determined was necessary to prove a violation of Wis. Stat. § 940.32(2m)(b), a class H felony.

¶ 59. As I read the statute, Wis. Stat. § 940.32(2m)(b) delineates a specific timeframe within which the present course of conduct must be committed: The State must prove that the accused committed the present violation (which by definition means two or more acts) within the seven years *after* the prior conviction. My reading of the statutory language is consistent with the text of the statute and the legislature's intent to establish delineated degrees of conduct that punish aggravated incidents of stalking behavior. *State*

393

*v. Warbelton,* 2009 WI 6, ¶¶ 38–39, 315 Wis. 2d 253, 759 N.W.2d 557. The majority's interpretation of § 940.32(2m)(b), in my view, effectively undercuts the legislatively established graduated system of punishment for stalking.

¶ 60. The majority opinion repeatedly states that the jury instructions were correct. I disagree.

¶ 61. Under my interpretation of Wis. Stat. § 940.32(2m)(b), the jury instructions given in this case were erroneous. The jury was not instructed to limit its consideration of acts constituting a course of conduct to acts occurring after the prior June 30, 2003 conviction. Because of the instructions given, we do not know which acts the jury used in finding that Conner engaged in a course of conduct.

¶ 62. Even under the majority's interpretation of the statute, it appears that at the very least Wis. Stat. § 940.32(2m)(b) requires that one of the acts constituting the course of conduct in the underlying stalking violation must occur within seven years *after* the prior conviction. Nevertheless, adhering to the jury instructions given in the present case, the jury could have relied only upon acts occurring in 2000–2001 to establish Conner's course of conduct. This view of the jury verdict is supported by the jury's acquittal of Conner of the charge of criminal damage to property stemming from the November 30, 2005 incident.

¶ 63. For the foregoing reasons, I conclude that the circuit court improperly admitted evidence of acts that preceded Conner's conviction of June 30, 2003, for the purpose of establishing the course of conduct element of the present stalking offense. In light of the evidence offered in the instant case, and the jury instructions given, I cannot be sure that the jury determined that any of the acts constituting the present

course of conduct occurred after the prior 2003 conviction. Therefore, I would reverse the judgment of conviction entered against Conner.

## II

¶ 64. I now turn to Conner's assertion that her due process right to notice was violated. As the majority correctly states at ¶¶ 20 and 21, Conner has a due process right to notice of the facts the State claims constitute the offense charged. Due process requires that the prosecution state an offense to which Conner is able to plead or prepare a defense.

¶ 65. Conner concedes that she had proper notice regarding incidents occurring on or about November 30, 2005. The alleged facts of these incidents were detailed by police investigation reports that the State expressly incorporated into the complaint. Conner asserts, however, that her due process right was violated because the charging documents do not contain the time frame for which she was prosecuted for a continuing offense.

¶ 66. The majority opinion concludes that the complaint gave Conner sufficient notice that the State was relying on 27 or so other incidents occurring in 2000–2001 to prove the 2005 underlying charge of stalking. These 27 or so incidents were listed in a motion that was attached to the complaint. The motion had been filed in another case against Conner and was a motion seeking to admit other acts evidence against Conner. Majority op., ¶ 25. Citing *State v. Copening,* 103 Wis. 2d 564, 309 N.W.2d 850 (Ct. App. 1981), the State asserts that evidentiary facts are generally found in the complaint and need not appear in the information.

395

¶ 67. As I read the complaint, it is not clear that the State was contending that Conner had engaged in a course of conduct that spanned the years 2000 through November 2005. If that was the point of the complaint, why did the State later in the present case move to seek admission of these prior acts set forth in the motion attached to the complaint (as well as later acts) as other acts evidence? The circuit court in the present case originally ruled that this evidence of Conner's acts between 2000 and 2005 was admissible as other acts evidence for the purpose of establishing motive. In a change of course in the waning moments of trial, the circuit court permitted the prosecutor to use these acts to establish the course of conduct element in the underlying stalking offense. The number of alleged acts and the time frame of the acts to prove the crime were thus dramatically increased.

¶ 68. Under these circumstances I cannot conclude that a list of acts set forth in a motion relating to another case against Conner and relating to the admission of other acts evidence against Conner gave Conner notice that the State was relying on the numerous acts specified in the motion to prove the 2005 underlying charge of stalking.

¶ 69. For the reasons set forth, I would reverse the judgment of conviction. Accordingly, I dissent.

¶ 70. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.